UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRETT JOHNSON, on behalf of himself, and all others similarly situated,

                Plaintiff,

-against-

WAVE COMM GR LLC, and ROBERT GUILLERAULT and RICHARD RUZZO individually,

                Defendants

**ELECTRONICALLY FILED**

Civil Case No.: 6:10-cv-0346 (DNH/ATB)

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

---

GIRVIN & FERLAZZO, P.C.
Attorneys for Defendants
*Wave Comm GR, LLC, Robert Guillerault and Richard Ruzzo*
Office and P.O. Address
20 Corporate Woods Blvd.
Albany, New York 12211
Tel:   (518) 462-0300
Fax:   (518) 462-5037

Scott P. Quesnel, Esq.     (Bar Roll No.: 513710)
Patrick J. Fitzgerald III, Esq.  (Bar Roll No.: 511103)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .................................................................................................................................1

POINT I    PLAINTIFFS CONCEDE THAT SOME OF THE CLAIMS OF MEMBERS OF SUBCLASS I AND II ARE TIME BARRED PURSUANT TO 29 U.S.C. § 255 ................................................................1

POINT II    THE CLAIMS BEING PURSUED IN THIS CASE HAVE BEEN SIGNIFICANTLY CLARIFIED AND LIMITED THROUGH THE ARGUMENTS OF THE PARTIES ........................................................2

POINT III    THE EVIDENCE SHOWS THAT THE RETAIL SERVICE ESTABLISHMENT EXCEPTION TO THE FLSA APPLIES TO THE MEMBERS OF SUBCLASS I AND PRECLUDES THEIR CLAIMS FOR UNPAID WAGES AND OVERTIME WAGES ...........................3

    A.    Wave Comm Qualifies as a Retail Service Establishment ..........................4

    B.    Each Member of Subclass I Received at Least Fifty (50%) Percent of His Income in the Form of Commissions ...................................8

    C.    Each Member of Subclass I was Paid at Least One and One-Half Times the Applicable Minimum Wage for All Hours of Work Performed for Wave Comm ....................................................................10

    D.    Conclusion With Respect to Subclass I .....................................................11

POINT IV    THE CLAIMS OF THE MEMBERS OF SUBCLASS II MUST BE DISMISSED SINCE WAVE COMM'S WEIGHTED HALFTIME PLAN COMPILED WITH THE FLSA AND CLASS MEMBERS WERE PAID FOR ALL REPORTED HOURS OF WORK AFTER APRIL 2, 2010 ........................................................................................12

POINT V    DEFENDANTS ARE ENTITLED TO A JUDGMENT ON THEIR CLAIMS FOR UNJUST ENRICHMENT AGAINST THE OPT-IN PLAINTIFFS WHO ARE PARTIES TO THIS SUIT .........................................14

CONCLUSION ............................................................................................................................15

## **TABLE OF AUTHORITIES**

*English v. Ecolab, Inc.*,
    2008 WL 878456 (S.D.N.Y. March 31, 2008) .......................................................... 4, 5, 7, 8

*Hodgson v. Brand Names*,
    452 F.2d 384 (5th Cir. 1971) ............................................................................................. 6

*Hodgson v. Prophet Co.*,
    472 F.2d 196 (10th Cir. 1972) ........................................................................................... 6

*Horn v. Digital Cable & Communications, Inc.*,
    2009 WL 4042407 (N.D. Ohio February 11, 2009) ........................................................ 10

*Mechmet v. Four Seasons Hotels, Ltd.*,
    825 F.2d 1173 (7th Cir. 1987) ......................................................................................... 11

*Owopetu v. Nationwide CATV Auditing Services, Inc.*,
    2011 WL 4433159 (D. Vt. September 21, 2011) ..................................................... 6, 7, 8, 9

*Reich v. Cruises Only, Inc.*,
    1997 WL 1507504 (M.D. Fla. June 5, 1997) .................................................................... 6

*Reich v. Delcorp, Inc.*,
    3 F.3d 1181 (8th Cir. 1993) ............................................................................................... 5

*Schultz v. Crotty Bros. Dallas, Inc.*,
    304 F.Supp. 191 (W.D. Tex. 1969) ................................................................................... 6

*Schwind v. EW & Associates, Inc.*,
    371 F.Supp.2d 560 (S.D.N.Y. 2005) ................................................................................. 6

*Walling v. Youngerman-Reynolds Hardwood Co.*,
    325 U.S. 419 (1945) ........................................................................................................ 13

*Wilks v. Pep Boys*,
    2006 WL 2821700 (M.D. Tenn. Sept. 26, 2006) ............................................................... 9

*Wirtz v. Campus Chefs, Inc.*,
    303 F.Supp. 1112 (N.D. Ga. 1968) ................................................................................... 6

*Yi v. Sterling Collision Ctrs., Inc.*,
    480 F.3d 505 (7th Cir. 2007) ......................................................................................... 8, 9

## **STATUTES**

29 U.S.C. § 207 ............................................................................................................*passim*

29 U.S.C. § 213 ..................................................................................................................4, 5

29 U.S.C. § 216 .......................................................................................................................2

29 U.S.C. § 255 .......................................................................................................................1

29 U.S.C. § 256 .......................................................................................................................1

## **REGULATIONS**

29 C.F.R. § 779.318................................................................................................................7

29 C.F.R. § 779.320................................................................................................................6

29 C.F.R. §779.327.................................................................................................................4

29 C.F.R. §779.328..............................................................................................................4, 5

12 N.Y.C.R.R. § 142-2.2 .......................................................................................................3

PRELIMINARY STATEMENT

On January 25, 2013, Defendants filed a motion for summary judgment seeking the complete dismissal of all claims being pursued by Plaintiff Brett Johnson, and the classes of Plaintiffs he purports to represent (Dkt. No. 124). On February 17, 2013, two days after the deadline for filing opposition briefs, Plaintiffs opposed Defendants' motion (Dkt. No. 135-6). The issues now before this Court are fully briefed, and those arguments will not be reiterated here. Rather, through the instant Reply, Defendants will show why the undisputed facts, and the arguments advanced by Defendants that went completely uncontroverted by Plaintiffs, warrant the dismissal of this action.

ARGUMENT

POINT I

PLAINTIFFS CONCEDE THAT SOME OF THE
CLAIMS OF MEMBERS OF SUBCLASS I AND II
ARE TIME BARRED PURSUANT TO 29 U.S.C. § 255.

Defendants argued that any member of Subclass I or II who elected to "opt-in" to this lawsuit more than two, or three years after receiving a paycheck from Wave Comm in which the technician claims he was underpaid in violation of the Fair Labor Standards Act (hereinafter "FLSA") are time barred from pursuing such a claim pursuant to 29 U.S.C. §§ 255 & 256. Plaintiffs' cursory response to Defendants' timeliness argument, states in its entirety:

> *Defendants' first point recites the FLSA's statute of limitations but offers no argument. (Defs' Mem. at 9-10). Plaintiff does not dispute Defendants' recitation of the law. Given that neither party moved on the issue, however, it should be left to the jury to decide whether Defendants' actions were willful* (citation omitted).

(Dkt. No. 135, p. 2, Fn. 2). Plaintiffs are correct that Defendants did not argue the issue of "willfulness," since Plaintiffs' must show that Defendants willfully violated the FLSA in order to receive the benefit of longer statutes of limitations. Rather, what Defendants argued was that some

1

of the claims for wages made by the opt-in Plaintiffs are time barred, in whole or in part, under either a two or three year statute of limitations. In support of that argument, Defendants offered the Court an Exhibit which specifically identified: (1) each opt-in Plaintiff's name; (2) each opt-in Plaintiff's date of consent (e.g. the date a notice was filed with the Court indicating a class member's consent to join the suit as required by 29 U.S.C. § 216(b)); (3) the earliest date of available recovery under a three year statute of limitations for willful violations of the FLSA; (4) the earliest date of available recovery under a two year statute of limitations for non-willful violations of the FLSA (Dkt. No. 124-84, ¶ 22; Dkt. No. 124-122). Plaintiffs have not refuted the representations made by Defendants in that Exhibit and, therefore, the Court should hold that the claims of the opt-in Plaintiffs are limited as identified in Dkt. No. 124-122.

## POINT II

### THE CLAIMS BEING PURSUAED IN THIS CASE HAVE BEEN SIGNIFICANTLY CLARIFIED AND LIMITED THROUGH THE ARGUMENTS OF THE PARTIES

As it stands, this case concerns two subclasses of Plaintiffs who are pursuing claims for overtime and unpaid wages under the FLSA and the New York State Labor Law:

Subclass I: All persons who worked for Wave Comm GR LLC ("Wave Comm") as installation technicians ("installers") in the State of New York at any time between April 2006 and March 2010, with compensation determined based on "Tech Rates" assigned by Wave Comm, who did not receive proper overtime pay when they worked more than forty (40) hours in any given workweek.

Subclass II: All persons who worked for Wave Comm as installers in the State of New York at any time between March 2010 and April 2011, with compensation determined based on Wave Comm's weighted halftime compensation system, with performance incentives based on "Tech Rates," who did not receive proper overtime pay when they worked more than forty (40) hours in any given workweek.

(Dkt. No. 76, pp. 2-3). The members of Subclass I were not paid premium wages for overtime hours because Wave Comm considered them to be exempt from the overtime requirements of the

2

FLSA and the Labor Law. In their motion, Defendants argue that the members of Subclass I are not entitled to any additional wages because they were exempt from the FLSA pursuant to the retail and service establishment exception, codified at 29 U.S.C. § 207(i).[1] If Defendants are correct, the claims of the members of Subclass I must be dismissed.

In stark contrast, the members of Subclass II do not dispute that they received premium overtime wages. Instead, they claim that their wages were underpaid for two reasons. First, they claim that they were not paid for work they performed during a thirty minute meal period that Wave Comm instructed them to take during the course of their work day, and were not compensated for time they spent completing and submitting billing sheets at the end of each work day. Second, they claim that Wave Comm failed to accurately calculate the value of the overtime wages earned under Wave Comm's "weighted halftime" compensation plan. As set forth more fully below, both claims must be dismissed and, upon doing so in conjunction with the dismissal of the claims of members of Subclass I, the Court should dismiss this case in its entirety.

## POINT III

### THE EVIDENCE SHOWS THAT THE RETAIL SERVICE ESTABLISHMENT EXCEPTION TO THE FLSA APPLIES TO THE MEMBERS OF SUBCLASS I AND PRECLUDES THEIR CLAIMS FOR UNPAID WAGES AND OVERTIME WAGES

As discussed in detail in Defendants' prior submissions, in order to show that the members of Subclass I are exempt from the FLSA pursuant to 29 U.S.C. § 207(i), Wave Comm must show that: (1) it qualifies as a "retail or service establishment; (2) each subclass member received at least fifty (50%) percent of his income in the form of "commissions;" and (3) each subclass member was paid at least one and one-half times the applicable minimum wage for all hours of work performed. *See* 29 U.S.C. § 207(i).

---

[1] Defendants also argued that if the claims of members of Subclass I are dismissed pursuant to 29 U.S.C. § 207(i), then the claims members of Subclass I are pursuing under the New York State Labor Law also must be dismissed as a matter of law pursuant to 12 N.Y.C.R.R. § 142-2.2 (Dkt. No. 124, p. 29). Plaintiffs do not dispute this argument.

3

### A. Wave Comm Qualifies as a Retail Service Establishment.

The determination of whether Wave Comm is a "retail" service establishment ultimately comes down to a simple premise: does this Court intend to be guided by outdated regulations promulgated by the Secretary of Labor concerning a provision of the FLSA that was repealed almost twenty-five years ago, or does the Court intend to be guided by recent court decisions from this Circuit and others which considered the applicability of Section 207(i) to businesses that are not only analogous to Wave Comm, but in two cases, virtually identical to Wave Comm. From Defendants' prospective, the choice is obvious.

Plaintiffs concede that at least 75% of Wave Comm's sales are derived from the sale of cable installation, maintenance and repair services, but argue that those services are not "retail services" (Dkt. No. 135, p. 6). Plaintiffs offer several grounds for this argument, most of which are premised upon Secretary of Labor Regulations that were enacted to assist in the determination of whether an establishment qualified under the former 29 U.S.C. § 213(a)(2), which was repealed in 1989. *See* Pub. L. No. 101-157 (1989). Specifically, Plaintiffs claims that Wave Comm sells its services wholesale rather than retail, and sold its services to Time Warner Cable, Inc. (hereinafter "TWC") through one reverse auction (Dkt. No. 135, 9-12 (citing 29 C.F.R. §§ 779.327-8)). Defendants addressed both of these arguments in opposition to Plaintiffs' motion for partial summary judgment (Dkt. No. 134). Nevertheless, the wholesale versus retail distinction does not have the same relevance under Section 207(i), if any, that it had under Section 213(a)(2). The Court in *English* held that "[a]lthough courts interpreting the current § 7(i) exemption rely on language in the former § 13(a)(2) exemption, the two provisions were designed to address *fundamentally different* wage and hour concerns." *English v. Ecolab, Inc.*, 2008 WL 878456 at *2 (S.D.N.Y. March 31, 2008) (emphasis added). According to *English*, the wholesale versus retail distinction was relevant because the exemption found in Section 213(a)(2) was "contingent on the

4

size of the establishment and the type of transactions in which it engaged." Such considerations are not, however, relevant to Section 207(i). Thus, this Court should follow *English* and conclude that "the cases and regulations interpreting § 13(a)(2) apply with less force, or perhaps in some cases not at all, to employers claiming the § 7(i) exemption." *English*, 2008 WL 878456 at *4. [2]

Similarly, Plaintiffs rely upon 29 C.F.R. § 779.328(c) and argue that since Wave Comm established the rate it would charge for its installation, maintenance, and repair services through one instance of reverse bidding – approximately three years after Wave Comm began offering installation, maintenance, and repair services – "[u]nder [United States Department of Labor] regulations, this fact is *fatal* to Wave Comm's argument that it is a retail entity" (Dkt. No. 135, p. 9) (emphasis added). As *English* demonstrates, Courts within this Circuit will apply regulations like 29 C.F.R. § 779.328(c) with less force, and even refuse to apply them at all where other factors identified in the Secretary of Labor's regulations and pertinent case law support the conclusion that the employer claiming exemption under Section 207(i) provides a retail service. In fact, Plaintiffs recognize that "[s]ome district courts, however, have ignored, or given less deference to the DOL regulations related to Section 213(a)(2)." (Dkt. No. 135, p. 5, Fn. 6 (citations omitted)). As a result, none of the administrative regulation promulgated by the Secretary of Labor to interpret Section 213(a)(2) can be "fatal" to Wave Comm's argument that it is a retail service establishment.

Defendants recognize that many cases addressing the Section 207(i) defense rely on the Secretary of Labor's regulations, albeit with differing levels of deference. In view of this, Defendants argued that Wave Comm is akin to the repair-type businesses that the Secretary of

---

[2] Plaintiffs once again rely upon the decision in *Reich v. Delcorp, Inc.* to support of the notion that Section 213(a)(2) is relevant to the "retail" inquiry in this case (Dkt. No. 135, p. 5 (citing *Reich v. Delcorp, Inc.* 3 F.3d 1181, 1183 (8th Cir. 1993). It should be noted, however, that in *Reich*, the Eighth Circuit held that a carpet cleaning business was a "retail or service establishment" within the meaning of exemption from overtime provisions, despite a contrary position taken by the Secretary of Labor who was a party to that action.

Labor recognized as providing a retail service in 29 C.F.R. § 779.320. Defendants offered repair-type businesses as the closest analogy under 29 C.F.R. § 779.320 to Wave Comm's service because the cable television, internet, and digital telephone installation, maintenance, and repair services Wave Comm provides did not exist when the Secretary of Labor promulgated that regulation in 1970. Plaintiffs challenge this characterization and argue that "Wave Comm's business lacks any rational connection to those types of establishments" since Wave Comm simply is a "middle-man, installing or servicing equipment so TWC's customers may receive TWC's services" (Dkt. No. 135, pp. 7-8). This central tenet of Plaintiffs' argument completely ignores the long line of cases in which it has been held that the ultimate recipient of a service is the customer of the business that provides the service, even if the service is requested through a third party or the service provider is compensated directly by a third party. *See Owopetu*, 2011 WL 883703, at *7 (D. Vt. March 11, 2011); *Owopetu v. Nationwide CATV Auditing Services, Inc.*, 2011 WL 4433159, at *6-7 (D.Vt. September 21, 2011); *Schwind v. EW & Associates, Inc.*, 371 F.Supp.2d 560, 565-7 (S.D.N.Y. 2005); *Schultz v. Crotty Bros. Dallas, Inc.*, 304 F.Supp. 191, 196 (WD Tex. 1969); *Wirtz v. Campus Chefs, Inc.*, 303 F.Supp. 1112, 1119 (N.D. Ga. 1968); *Hodgson v. Prophet Co.*, 472 F.2d 196, 204 (10th Cir. 1972); *Hodgson v. Brand Names*, 452 F.2d 384 (5th Cir. 1971); *Reich v. Cruises Only, Inc.*, 1997 WL 1507504 (M.D. Fla. June 5, 1997). Thus, the installation, maintenance, and *repair* services provided by Wave Comm are similar in their nature, although certainly not identical, to the types of repair businesses set forth in 29 C.F.R. § 779.320 that have been recognized by the Secretary of Labor as providing a retail service.

Plaintiffs further argue that Wave Comm is like a construction contractor because, among other things, it treats its employees "like a building or trade contractor would treat their employees," by conducting "extensive training on construction-like topics" and placing "heavy emphasis on the installer's ability to construct quality installations" (Dkt. No. 135, p. 11). First

6

and foremost, training technicians on how to properly climb a ladder, or training them on how to drill a hole that a coaxial cable will go through, does not constitute "extensive training on construction-like topics" as Plaintiffs contend (Dkt. No. 135, p. 11). In fact, Plaintiffs state themselves that "calling installers '*well trained* and highly compensated' is far from accurate" (Dkt. No. 135, p. 2, Fn. 3) (emphasis added). Second, ensuring that technicians perform the services that Wave Comm sells with a high degree of quality does not transform technicians into construction contractors. Thus, while Wave Comm has never denied that it provides training to its employees on topics like safety, and has never denied that it ensures the quality of each technician's work, those facts do not support the conclusion that cable installation, maintenance, and repair technicians are construction contractors.

When deciding whether Wave Comm provides a retail service, this Court must not become mired in a morass of outdated and, at times, contradictory administrative regulations which often lack a rational basis. The only Secretary of Labor regulation that modern courts routinely rely upon when analyzing the "retail" prong of the Section 207(i) defense is 29 C.F.R. § 779.318, which provides the clearest definition of a retail service establishment. As Defendants have already shown, Wave Comm satisfies all of the considerations identified in that regulation. In the end, however, the issue of whether Wave Comm provides a retail service should not be the primary focus of the Court. According to *English*, this Court should "focus[] on the employee's compensation rather than the employer's size or business plan" and, "[s]o long as the employee meets the other elements of the § 7(i) exemption - he receives commissions and his total wages meet the statutory threshold - it makes little difference whether he performs his services as part of a bulk, discount arrangement with a thousand unit fast food chain or a single one-off sale to a homeowner." *English*, 2008 WL 878456 at *14. Plaintiffs question the intelligence of the conclusions reached by the Courts in cases like *Owopetu* by arguing that they failed to give

7

adequate consideration to whether the defendants provided a retail service. Yet, one could equally argue that the *Owopetu* Court understood, like the Court in *English* did, that the primary focus in any FLSA wage case should be on the employees' compensation, and not the nature of the employer's business. While Defendants' recognize that proving Wave Comm is a retail establishment is part of their burden under Section 207(i), Defendants have met that burden for the reasons set forth more fully in Defendants' prior submissions.

### B. Each Member of Subclass I Received at Least Fifty (50%) Percent of His Income in the Form of Commissions.

Plaintiffs concede that every member of Subclass I earned at least fifty (50%) percent of his income under Wave Comm's first compensation plan, where compensation was based on "Tech Rates" assigned by Wave Comm (Dkt. No. 135-6, p. 4, Fn. 5). As a result, if the Court concludes that this compensation plan paid technicians by commission, then the Court must conclude that Wave Comm can satisfy the second requirement of the Section 207(i) defense.

Defendants relied on *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505 (7th Cir. 2007) and argued that Wave Comm's first compensation plan possessed all of the common components of a commission-based compensation scheme. According to *Yi*, commission-based compensation plans are tied to customer demand or the quantity of sales, provide performance-based incentives for the employee to increase his or her income, and there is proportionality between the value of the goods or services sold, and the rate paid to the employee. *Yi*, 480 F.3d at 508. Plaintiffs do not argue that Defendants' reliance upon *Yi* was in error, nor do they argue that wages paid under Wave Comm's initial compensation plan were disconnected from customer demand or that the plan did not provide performance incentives. Instead, Plaintiffs focus only on the third factor identified in *Yi* and claim that Defendants cannot satisfy the proportionality element.

8

Plaintiffs do not dispute that there is proportionality between the amount of income Wave Comm received for each item of work technicians performed, and the income technicians received for performing each item of work, as the undisputed evidence shows that technicians received a percentage of the amount of income Wave Comm received for each item of work. Plaintiffs are therefore forced to argue that "there is no evidence in this case that installers' compensation fluctuates 'in tandem with the amount charged' to TWC subscribers" (Dkt. No. 135, p. 14). Plaintiffs do not offer a single case which has applied the proportionality analysis in this manner. This is likely so because a "commission" requires a correlation between compensation received and "the charges *passed on* to customers." *Wilks v. Pep Boys*, 2006 WL 2821700, at * 17 n. 7, *18 (M.D.Tenn. Sept. 26, 2006) (emphasis added). Wave Comm charges a fee for every installation, maintenance and repair activity that its technicians perform. TWC passes that fee on to the consumer and the consumer pays for Wave Comm's service through a bill the consumer receives from TWC. Thus, since members of Subclass I received a percentage of the charge that was passed on to Wave Comm customers, the proportionality element identified in *Yi* is satisfied.

The 1996 Department of Labor opinion letter that Defendants indirectly cite in their motion was a source, along with *Owopetu* and *Wilks*, that Magistrate Judge Baxter relied upon when he held in this case that "[c]ommissions, for purposes of [29 U.S.C. § 207(i)], usually denote a percentage of the amount of monies paid out or received," as opposed to paying a set flat-rate for every item, regardless of its value (Dkt. No. 72, p. 17) (citations omitted). Judge Baxter saw no need to inquire into whether the compensation Wave Comm technicians received bore any relationship to what a TWC customer pays TWC for the service. In fact, during discovery, Plaintiffs sought testimony from a representative from TWC concerning "the proportional relationship between what Time Warner pays Defendants for each installation activity and what it actually charges to its customers" which, according to Plaintiffs, is a "line of questioning that bears

9

directly on the second element of the 207(i) defense: whether Plaintiffs' compensation 'represents commissions on goods and services'" (Dkt. No. 104, pp. 2-3). Magistrate Judge Baxter disagreed and denied Plaintiffs' motion for leave to subpoena TWC (Dkt. No. 107, p. 2). In doing so, he sent a clear message that proportionality concerns the correlation between the amount Wave Comm received for the services its technicians performed, and the amount Wave Comm paid to those technicians for performing those services.[3] The relevant evidence therefore shows that the members of Subclass I were paid by commission.

### C. Each Member of Subclass I was Paid at Least One and One-Half Times the Applicable Minimum Wage for All Hours of Work Performed for Wave Comm.

Plaintiffs offer the following argument, in its totality, concerning whether Wave Comm can satisfy the "minimum wage requirement" of 29 U.S.C. § 207(i) (e.g. the employee received wages that, when converted to an hourly wage, amount to one and one-half times the minimum wage for each hour of work performed), 29 U.S.C. § 207(i):

> *Plaintiffs acknowledge that he and the opt-in Plaintiffs earned more than one and one half the minimum wage in some, but not all weeks.*

(Dkt. No. 135, p. 4, Fn. 5). Through this statement, Plaintiffs concede that there were weeks when technicians earned wages that are sufficient to satisfy the minimum wage requirement of Section 207(i). Yet, Plaintiffs do not identify which weeks the members of Subclass I did not earn enough income to satisfy the minimum wage requirement. Defendants have offered the Court a detailed analysis which identifies every week in which a member of Subclass I earned at least one and one-half times the applicable minimum wage for each hour of work performed based on the reported "average" weekly hours obtained from each Plaintiff during discovery (Dkt. No. 124-119 - 20).

---

[3] The assertion that Wave Comm's proportionality arguments are "logically flawed" because it is inconsistent with Wave Comm's arguments under the "retail" requirement of the Section 207(i) analysis assumes that there is some correlation between those two factors. Plaintiffs do not cite a single case to support such an argument, which also is inconsistent with *Horn v. Digital Cable & Communications, Inc.*, 2009 WL 4042407, at *6 (N.D. Ohio, February 11, 2009).

Since Plaintiffs do not dispute Defendants' conclusions as embodied in that Exhibit, the Court must accept those conclusions and find that, for every week in which Defendants have shown that members of Subclass I satisfied the minimum wage requirement, the claims for unpaid wages being pursued for those weeks must be dismissed.[4]

### D. Conclusion With Respect to Subclass I.

Plaintiffs argue that "Defendants gloss over the heavy burden that they face in claiming the [retail and service establishment] exception" (Dkt. No. 135, p. 3). Defendants have never attempted to diminish their burden of proof with respect to Section 207(i). Rather, Defendants' have expended considerable time and resources marshaling multiple sources of evidence which show that Wave Comm is a retail business, and that members of Subclass I were paid enough commissions to fully compensate them at a rate equal to one and a half times the minimum wage for *every* hour they worked. Moreover, the fact that exemptions to the FLSA are to be narrowly construed does not mean that Wave Comm's task is insurmountable. As Judge Posner stated in *Mechmet v. Four Seasons Hotels, Ltd.*, "generalizations about interpretation, such as that exemptions from remedial statutes should be narrowly construed, are at best tie-breakers . . ." *Mechmet*, 825 F.2d 1173, 1177 (7th Cir.1987). This Court does not face a tie in this case, for Defendants have satisfied all of the criteria necessary to bring Wave Comm and the members of Subclass I under the retail service establishment exception. Defendants have also cited numerous decisions from this Circuit and through this country in which courts have concluded that businesses that not only are similar in nature to Wave Comm, but virtually identical to it in every respect, qualify under Section 207(i). The Court should, therefore, dismiss all claims being pursued by the members of Subclass I pursuant to 29 U.S.C. § 207(i).

---

[4] Defendants intend to argue through a separate motion that if this case is to proceed for those weeks where, based on the class member's estimate of hours, he did not satisfy the minimum wage requirement, the individualized inquiry that will be required for each class member is inconsistent with the spirit and purpose of the class action form. Therefore, Defendants will argue that this action should be decertified.

## POINT IV

### THE CLAIMS OF THE MEMBERS OF SUBCLASS II MUST BE DISMISSED SINCE WAVE COMM'S WEIGHTED HALFTIME PLAN COMPLIED WITH THE FLSA AND CLASS MEMBERS WERE PAID FOR ALL REPORTED HOURS OF WORK AFTER APRIL 2, 2010

Plaintiffs' arguments concerning Subclass II require the Court to resolve two fundamentally different questions. First, if a member of Subclass II did not accurately report all hours of work he performed, and Wave Comm did not know that he was underreporting his hours, is Wave Comm obligated to pay him for those extra hours of work? Second, did Wave accurately calculate the value of overtime wages under its weighted halftime compensation plan for all *reported* hours of work?

Defendants argued that, *as a matter of law*, Plaintiffs are not entitled to wages for work performed during their meal break when they were specifically told to take a thirty minute uninterrupted meal period, had the ability to stop working but elected not to do so, and never informed Wave Comm that they were working during their meal period (Dkt. No. 124, pp. 28-32). Defendants also argued, and Plaintiffs do not dispute, that each member of Subclass II had the ability to include time spent completing billing records at the end of each work day in his reported hours, but chose not to do so (Dkt. No. 135-1, ¶ 94). Plaintiffs do not respond to Defendants' argument that technicians who worked remotely and independently, with little or no oversight from Wave Comm, and who completed their own time records were obligated to accurately inform Wave Comm as to all hours worked (Dkt. No. 124-12, ¶ 12). Instead, Plaintiffs simply state:

> *Defendants go to great lengths to discredit Plaintiffs' claim that the time records kept during the Weighted Halftime period are inaccurate. Given the contradictory testimony, however, Defendants have at best created a question of fact that precludes summary judgment.*

Plaintiffs' two-sentence argument, which is not supported by a shred of evidence, is inadequate to defeat the legal arguments set forth in Defendants' motion. As a result, the Court should preclude

12

the members of Subclass II from pursuing wages for unreported work that Wave Comm had no way of knowing they were performing and, in the end, would have paid them for had they reported those hours (Dkt. No. 124-12, ¶ 12).

Plaintiffs continue to rely on *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945), to argue that Wave Comm's "weighted half-time compensation plan operated in the exact same manner as the compensation plan in *Youngman-Reynolds* and the DOL's regulations and Opinion Letter because it did not include the 'performance incentive' or 'bonus' in installer's regular rate calculation" (Dkt. No. 135, pp. 15-6). Through this argument, Plaintiffs essentially concede that if Wave Comm included the value of all compensation received (e.g. hourly pay and performance incentive) into the "regular rate" of pay calculation, then Wave Comm complied with the FLSA and Labor Law. Although Plaintiffs argue in their brief that Wave Comm did not include all remuneration earned in the regular rate calculation, Plaintiffs concede in their Response to Defendants' Local Rule 7.1 Statement of Material Facts that the weighted halftime compensation plan did in fact include total earnings, including hourly wages and performance incentive, when calculating an employee's regular rate of pay (Dkt. No. 135-1, ¶¶ 42-43). Thus, Plaintiffs no longer contend that performance incentives were excluded from the calculation of weighted halftime and, as such, Plaintiffs' argument with respect to Wave Comm's weighted halftime compensation plan must be rejected by the Court.[5]

Once the Court concludes that Wave Comm technicians are not entitled to additional compensation for hours of work they failed or refused to report to Wave Comm, and that the value

---

[5] In a patent attempt to salvage the claims of the members of Subclass II, Plaintiffs argue that weighted halftime did was not accurately calculated in every instance. In support of this assertion, Plaintiffs have scoured Wave Comm's payroll records and have found five (5) instances over a period of a year where overtime wages allegedly were not appropriately calculated. Nevertheless, this evidence shows that Wave Comm consistently calculated the value of overtime wages for all other technicians in all other weeks, and also that this case ultimately boils down to an examination of each class member's individual employment circumstances.

13

of overtime wages under the weighted halftime compensation plan were calculated consistently with the FLSA, the Court must dismiss the claims of the members of Subclass II.

POINT V

### DEFENDANTS ARE ENTITLED TO A JUDGEMENT ON THEIR CLAIMS FOR UNJUST ENRICHMENT AGAINST THE OPT-IN PLAINTIFFS WHO ARE PARTIES TO THIS SUIT

Plaintiffs concede that in order to prevail on a claim for unjust enrichment, Defendants must show three things: (1) Plaintiffs were enriched; (2) Plaintiffs' enrichment was at Defendants' expense; and (3) that equity and good conscience require Plaintiffs to return the money or property to Defendants (Dkt. No. 135, p. 17 (citation omitted)). Plaintiffs state, albeit somewhat inaccurately, that "the NYDOL mailed payments related to Wave Comm's Labor Law violations[6] on or about February 4, 2013" (Dkt. No. 135, p. 17). Through this statement, Plaintiffs concede that they have been enriched. Although the conclusion that Plaintiffs were enriched at Wave Comm's expense seems inescapable since the sole source of the funds Plaintiffs received was Wave Comm, Plaintiffs still argue that the "enrichment was not at Defendants' expense because Plaintiff had nothing to do with it occurring in the first place" (Dkt. No. 135, p. 17). Under the standard for unjust enrichment claims that Plaintiffs identify, the fact that Plaintiffs were not involved in Wave Comm's decision to repay the wage deductions is irrelevant, as is the fact that Wave Comm "chose to pay the NYDOL, knowing that the funds would be distributed to Plaintiff and other installers." *Id.* Thus, the evidence shows that the opt-in Plaintiffs were enriched at Wave Comm's expense.

---

[6] The checks that Wave Comm technicians received from the Department of Labor represent a repayment of the amounts that were deducted from their paycheck, and do not represent fines or penalties associated with Labor Law violations, nor do they have any relation to the underpayment of wage claims Plaintiffs are pursuing in this action. Wave Comm's alleged violation of the Labor Law was the manner in which it went about collecting a debt owed to it by its employees. The Department of Labor never, in any way, determined that the debt was not owed.

As to the third element, Plaintiffs argue equity and good conscience do not require Plaintiffs to repay the money because Defendants could have fought the citation for alleged wage violations but elected not to do so. *Id.* Plaintiffs characterize Defendants' Stipulation with the Department of Labor as a "self-inflicted wound" and rely upon a single tort case law which concerned the issue of mitigation of damages (Dkt. No. 135, p. 17 (citation omitted)). The tort case that Plaintiffs rely upon has no relevance to the unjust enrichment claim in this case and must, therefore, be disregarded by the Court.

The undisputed facts of this case are that: (1) each opt-in Plaintiff who is subject to Wave Comm's counterclaim has valuable tools in his possession that he purchased from Wave Comm; (2) each opt-in Plaintiff who is subject to this counterclaim now possesses a check equal to the value of the payments he made to Wave Comm to purchase his tools; (3) Wave Comm does not possess the tools it paid for and gave to each technician; and (4) Wave Comm no longer has the money it was paid by the technicians for the tools. From this, the Court can readily conclude that the Plaintiffs subject to this counterclaim have been enriched at Wave Comm's expense, and that equity and good conscience require the opt-in Plaintiffs to repay the amounts they are receiving because they agreed in writing to allow the tool deductions, accepted the tools, used them to earn a livelihood, and now have in their possession the full amount they paid for the tools. As such, the opt-in Plaintiffs have been unjustly enriched.

## CONCLUSION

Based on the foregoing arguments, Defendants respectfully request the Court grant Defendants' Motion for Summary Judgment, in whole or in part, for the reasons set forth above.

DATED:	February 22, 2013

GIRVIN & FERLAZZO, P.C.

By: _____
Patrick J. Fitzgerald III
Bar Roll No. 511103
Scott P. Quesnel, Esq.
Bar Roll No. 513710
Attorneys for Defendants
Office and P.O. Address
20 Corporate Woods Blvd.
Albany, New York 12211
(518) 462-0300
Email: pjf@girvinlaw.com
Email: spq@girvinlaw.com

Nicholas Kaster, PLLP
Timothy C. Selander, MN Bar No. 0387016
(motion for admission pro hac vice forthcoming)
Attorneys for Plaintiffs
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
612-256-3200

Thomas & Solomon, LLP
Patrick J. Solomon, NY Bar No. 535232
J. Nelson Thomas, NY Bar No. 2579159
Justin Cordello, NY Bar No. 4131447
Attorneys for Plaintiffs
693 East Avenue
Rochester, NY 14607
585-272-0540