UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRETT JOHNSON, on behalf of himself and
all others similarly situated,

                         Plaintiff,

    -v-                                          6:10-CV-346


WAVE COMM GR LLC; ROBERT GUILLERAULT,
individually; and RICHARD RUZZO, individually,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

NICHOLS KASTER PLLP                     PAUL J. LUKAS, ESQ.
Attorneys for Plaintiff                 TIMOTHY C. SELANDER, ESQ.
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

THOMAS & SOLOMON LLP                    J. NELSON THOMAS, ESQ.
Attorneys for Plaintiff                 PATRICK J. SOLOMON, ESQ.
693 East Avenue                         JUSTIN M. CORDELLO, ESQ.
Rochester, NY 14607

GIRVIN & FERLAZZO, PC                   SCOTT P. QUESNEL, ESQ.
Attorneys for Defendants                PATRICK J. FITZGERALD, III. ESQ.
20 Corporate Woods Boulevard
2nd Floor
Albany, NY 12211


DAVID N. HURD
United States District Judge

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

    The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -

    Compensation Plan A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

    New York State Department of Labor Investigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . - 5 -

    Compensation Plan B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 8 -

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

    Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 9 -

    Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 11 -

    The "Retail or Service Establishment" Exemption to the FLSA. . . . . . . . . . . . . . . . - 12 -

        "Retail or Service Establishment". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -

            Services for Resale. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -

            Recognition as Retail in Industry. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 18 -

                Retail Concept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 19 -

                Recognition as Retail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -

        Commissions.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 27 -

        Regular Rate of Pay Equal to or Exceeding One and One-Half Times the

            Minimum Wage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 32 -

            FLSA Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 34 -

                April 2006 to September 27, 2009. . . . . . . . . . . . . . . . . . . . . - 34 -

                September 28, 2009 to March 2010. . . . . . . . . . . . . . . . . . - 35 -

            NYLL Class.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 35 -

        Conclusion as to Exemption. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -

    Compensation Plan B. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -

    Plan B's Weighted Halftime Formula. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 37 -

    Unreported Hours. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 39 -

    Individual Liability of Guillerault and Ruzzo. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 42 -

    Unjust Enrichment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 44 -

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 46 -

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Brett Johnson ("plaintiff") brings this action on behalf of himself and all others similarly situated against Wave Comm GR LLC ("Wave Comm"), and its two owners, Robert Guillerault ("Guillerault") and Richard Ruzzo ("Ruzzo") (collectively "defendants") alleging violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201–219 ("FLSA") and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190–191. Plaintiff claims Wave Comm failed to properly compensate Wave Comm installation technicians ("installers") for overtime work. Defendants deny any violations of the FLSA or NYLL and counterclaim for unjust enrichment.

Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule ___") 56. Plaintiff opposed, and defendants replied. On the same day, plaintiff filed a motion for partial summary judgment. Defendants opposed, and plaintiff replied. Oral argument was heard on April 19, 2013 in Utica, New York.[1] Decision was reserved.

## II. FACTUAL BACKGROUND

### A. The Parties

Wave Comm, a New York corporation with an office in Utica, enters into contracts with cable television providers to perform installation and maintenance services for residential, commercial, and governmental customers in the surrounding area. Guillerault

---

[1] Also pending but not the subject of oral argument nor this Memorandum-Decision and Order is defendants' motion for complete class decertification of both the FLSA and NYLL classes. ECF No. 141. That motion will be addressed in a separate decision filed this same date.

and Ruzzo are the sole owners of Wave Comm, and each possess a one-half interest in the business. They exercise joint financial control over the business and also make decisions regarding the hiring and firing of employees, compensation policies, and work schedules.

During the relevant time, Wave Comm's primary client was Time Warner Cable ("Time Warner"). Wave Comm's contract with Time Warner accounted for more than 75% of its revenue and was obtained through a reverse bidding process. Wave Comm employed installers whose duty it was to perform installation, maintenance, and construction services on cable television, internet, and telephone equipment for Time Warner subscribers.[2] The parties agree that Wave Comm installers had the same basic duties, but disagree that installers had the same work schedules. Johnson was an installer for Wave Comm from June 2008 to July 2010.

Time Warner directed Wave Comm to provide installation and maintenance services to Time Warner subscribers via work orders. Installers would receive new work orders each day.[3] After the work was completed, Time Warner compensated Wave Comm according to a rate schedule for each individual type of service performed. Wave Comm then paid its installers. During the time period at issue in this lawsuit (April 2006 to April 2011), Wave Comm utilized two distinct compensation plans for paying its installers.[4]

---

[2] In addition to using Wave Comm installers, Time Warner also employed its own installers. Time Warner installers performed the same work as Wave Comm installers, but were paid an hourly wage plus overtime when they worked more than forty hours in a week.

[3] The manner in which installers received work orders changed over time.

[4] These plans are what separate the subclasses that have been certified, as discussed below.

- 4 -

### B. Compensation Plan A

From April 2006 through March 2010, Wave Comm classified installers as exempt from the overtime pay requirements of federal and state law and paid them for each discrete item of work they performed, based on the rates Wave Comm negotiated with Time Warner, without regard for the amount of time spent doing the work. The amount paid to each installer was based on the installation activity and the installer's "Tech Rate." Tech Rates were determined by installers' prior experience, longevity with Wave Comm, proficiency, and regular evaluations of their overall work performance.

From April 2006 through April 2009, Wave Comm used a Tech Rate schedule that employed seven different Tech Rates, ranging from the lowest of "Probationary Technician" to the highest of "Tech Supervisor," with five intermediate Tech Rates between those two rates. From approximately January 1, 2009 until April 2011, Wave Comm expanded the Tech Rate schedule to include ten intermediate Tech Rates between the "Probationary Technician" and the "Tech Supervisor" rates.

Wave Comm did not track the number of hours its installers worked each day or each week. Guillerault Aff., Jan. 25, 2013, ¶¶ 24, 25, ECF No. 124–12. Instead, at the end of each day, installers would add up their daily installation activities and report them to Wave Comm by email.

### C. New York State Department of Labor Investigation

In September 2009, the New York State Department of Labor ("NYDOL") began an investigation into how Wave Comm paid its installers. Specifically, NYDOL investigated Wave Comm's failure to track its installers' work hours and failure to pay installers overtime wages when they worked more than forty hours in a work week. At this time,

Wave Comm directed installers to start accurately and completely recording their work hours beginning on September 28, 2009. Ultimately, NYDOL withdrew its investigation of Wave Comm's overtime pay practices to allow the issue to be decided in this case. However, in March 2010, Wave Comm reclassified its installers as non-exempt from overtime payments and instituted a "weighted halftime" compensation plan, referred to as Compensation Plan B ("Plan B").

The investigation also revealed that Wave Comm made deductions from installers' pay to cover the cost of tools that installers needed to perform their job duties. Essentially, installers were required to provide their own tools but often could not afford to purchase them outright. To facilitate the purchase of tools, Wave Comm purchased the tools and allowed installers to pay for the tools on an installment basis without interest through regular payroll deductions. Once the full value of the tools was deducted, Wave Comm ceased making deductions and the installer was allowed to keep the tools. NYDOL determined that these payroll deductions constituted an actionable violation of the NYLL. In May 2011, defendants executed a stipulation with NYDOL wherein Wave Comm agreed to pay NYDOL $147,478.61 for the wage deductions they made from 2005 to 2010. The installers received payments from NYDOL reimbursing them for the unlawful wage deductions made by Wave Comm. The installers are still in possession of the tools.

### D. Compensation Plan B

In March 2010, following the NYDOL investigation, Wave Comm implemented Plan B, a "weighted halftime" compensation plan, which included the following three components: (1) hourly earnings, (2) a performance incentive, and (3) weighted halftime

(overtime).  First, hourly earnings were determined by multiplying an installer's total number of reported work hours by their hourly Tech Rate.  Second, each installer was eligible for a performance incentive, which was additional compensation that could be earned by performing high quality work quickly.  The determination of whether an installer earned a performance incentive was made on a week-to-week basis as follows:  Wave Comm determined the total value of the installer's work based on the prior piece rate compensation plan; if the installer's hourly earnings exceeded the total value of the piece work under the piece rate compensation plan, no additional compensation was provided; but, if the installer's hourly earnings did not exceed the total value of the work under the piece rate compensation plan, the installer received additional compensation equal to the difference between his hourly earnings and the total value of the piece work. Third, regardless of whether an installer received a performance incentive, any installer who reported that he worked more than forty hours in a work week received additional compensation referred to as weighted halftime.  Weighted halftime was calculated by taking the installer's total earnings, including hourly earnings plus performance incentives, and dividing that total amount by the installer's reported hours of work during that pay period.  That figure was then divided in half and multiplied by the number of hours worked by the installer over forty in that pay period to determine the amount of weighted halftime owed.

Plan B was in place from approximately March 2010 through April 2011, when Wave Comm began compensating installers under Compensation Plan C, a "points-based" system which includes a premium payment for the calculated value of overtime work.  Plan C is not at issue in this lawsuit.

## III.  PROCEDURAL HISTORY

Plaintiff brought this collective and class action lawsuit in March 2010 to recover unpaid overtime wages under the FLSA and the NYLL.

In July 2011, plaintiff's unopposed motion for conditional certification of the FLSA class pursuant to 29 U.S.C. § 216(b) was granted.  <u>See</u> ECF No. 59.  Notice of the action was mailed to Wave Comm employees who had worked as installers within the past three years.[5]  Pursuant to the FLSA, plaintiffs must opt-in to a collective action by filing written consent with the court.  29 U.S.C. § 216(b) (requiring employees to affirmatively consent to join a collective action).  There are currently 57 installers in the FLSA opt-in collective action.

In October 2011, plaintiff's opposed motion for certification of the NYLL class pursuant to Rule 23 was granted.  <u>Johnson v. Wave Comm GR LLC</u>, No. 6:10–CV–346, 2011 WL 10945630 (N.D.N.Y. Oct. 4, 2011) (Report-Recommendation) (Baxter, M.J.) <u>adopted by</u> 2011 WL 10945627 (N.D.N.Y. Oct. 25, 2011).  Notice of the action was mailed to Wave Comm employees who had worked as installers between April 4, 2006 and April 30, 2011.[6]  Pursuant to the NYLL, individuals who fall within the class description become plaintiffs and must opt-out if they do not wish to proceed as part of the class action.  <u>See e.g.</u>, <u>Damassia v. Duane Reade, Inc.</u>, 250 F.R.D. 152, 161 (S.D.N.Y. 2008) ("[I]n a class action potential class members are parties to the suit unless they affirmatively opt out.").

---

[5]  As explained below, the limitations period for a FLSA collective action is two years or, if the violation was willful, three years.  29 U.S.C. § 255(a).

[6]  NYLL class actions are subject to a six year statute of limitations.  N.Y. Lab. Law § 663(3).

No class member opted-out and there are approximately 200 members of the NYLL class.[7]

> The proposed class was also divided into the following two subclasses:
>
> **Subclass I**:  All persons who worked for Wave Comm as installers . . . at any time between April 2006 and March 2010 . . . who did not receive proper overtime pay when they worked more than forty (40) hours in any given work week. [*under Plan A*]
>
> **Subclass II**:  All persons who worked for Wave Comm as installers . . . at any time between March 2010 and April 2011, with compensation determined based on Wave Comm's weighted halftime compensation system . . . who did not receive proper overtime pay when they worked more than forty (40) hours in any given work week. [*under Plan B*]

Id.

## IV.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment will not be entered where there is a genuine dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party."  Id.

---

[7]  The 57 opt-in plaintiffs in the FLSA class are also members of the NYLL class.

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." <u>Rodriguez v. City of N.Y.</u>, 72 F.3d 1051, 1060-61 (2d Cir. 1995). "When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." <u>Jeffreys v. City of N.Y.</u>, 426 F.3d 549, 553 (2d Cir. 2005). Summary judgment should be granted "where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." <u>Schwimmer v. Kaladjian</u>, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing <u>Anderson</u>, 477 U.S. at 249–50).

Defendants move for summary judgment, arguing: (1) some opt-in plaintiffs' claims under the FLSA are time barred or limited; (2) members of Subclass I were exempt from overtime payments under the retail or service establishment exemption of the FLSA; (3) members of Subclass I were exempt from overtime payments under the NYLL; (4) members of Subclass II received overtime wages in compliance with the FLSA and NYLL; and (5) they are entitled to judgment as a matter law on their counterclaim for unjust enrichment.

Plaintiff moves for partial summary judgment, arguing: (1) members of Subclass I were not subject to the retail or service establishment exception of the FLSA; (2) members of Subclass II were not paid overtime wages in accordance with the FLSA and the NYLL; (3) Guillerault and Ruzzo are employers under the FLSA and therefore individually liable; and (4) defendants are not entitled to damages for unjust enrichment.

## B.  Statute of Limitations

Defendants argue the statute of limitations that applies to claims for overtime wages and liquidated damages under the FLSA bars some of the opt-in plaintiffs from recovering any damages in this case, and limits the damages available to other opt-in plaintiffs based on the date each opt-in plaintiff elected to join this suit.

Claims for overtime wages under the FLSA are subject to a two year statute of limitations unless the plaintiff can prove the employer committed willful violations.  29 U.S.C. § 255(a).  If the plaintiff establishes that the violations were willful, a three year limitations period applies.  Id.  "[A] claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid."  Cook v. United States, 855 F.2d 848, 851 (2d Cir. 1988) An action is deemed commenced:

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> (b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.  Accordingly, each opt-in plaintiff was required to file his consent to join this lawsuit within two years of the last pay period for which he claims that he failed to receive wages as required by the FLSA, or within three years of that pay period if he can prove that the employer willfully violated the FLSA.

Defendants have submitted a chart which specifically identifies the date each opt-in plaintiff filed his consent and, based on this date, the extent of the limitation or preclusion of each class members' claim for damages under the FLSA.  See Quesnel Aff., Jan. 25, 2013, Ex. W, ECF No. 124–122.  Plaintiff does not dispute the law nor has opposed defendants'

chart.  However, neither party moved for summary judgment on the issue of willfulness, and the question of willfulness is generally left to the trier of fact, see Solis v. SCA Rest. Corp., 938 F. Supp. 2d 380, 393 (E.D.N.Y. 2013) (collecting cases).

Accordingly, it is found that the claims of the FLSA opt-in plaintiffs are limited as identified in defendants' Exhibit W, subject to a determination of willfulness by the jury.

### C. The "Retail or Service Establishment" Exemption to the FLSA

The overtime compensation requirement of the FLSA, 29 U.S.C. § 207(a)(1), provides that "employees who work more than 40 hours per week must be compensated for each hour worked over 40 'at a rate not less than one and one-half times the regular rate at which he is employed.'"  Young v. Cooper Cameron Corp., 586 F.3d 201, 204 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1)).  The FLSA also sets forth a number of exemptions to this requirement. See 29 U.S.C. § 207(b)-(q).

Defendants argue they were not required to provide overtime compensation to members of Subclass I because they were exempt workers under the "retail or service establishment exemption" enumerated in § 207(i).  That provision states:

> No employer shall be deemed to have violated . . . [29 U.S.C. § 207(a)] by employing any employee of a retail or service establishment for a work week in excess of . . . [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly . . . [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).  Thus, in order to show that the members of Subclass I were exempt workers, defendants must show:  (1) Wave Comm qualifies as a retail or service establishment; (2) each Subclass I member received at least 50% percent of his income in the form of "commissions"; and (3) each Subclass I member was paid at least one and

one-half times the minimum wage for all hours of work performed.  See Schwind v. EW & Associates, Inc., 371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005).

"Because the FLSA is a remedial law, exemptions to the overtime pay requirement are narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." In re Novartis Wage and Hour Litig., 611 F.3d 141, 150 (2d Cir. 2010) (internal citations and quotations omitted), abrogated on other grounds by Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156 (2012).  "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." A.H. Phillips, Inc., v. Walling, 324 U.S. 490, 493 (1945). Accordingly, "an employer bears the burden of proving that its employees fall within an exempted category of the Act." Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991).  Plaintiff contends Wave Comm is unable to satisfy this heavy burden.

Members of Subclass I also seek to recover overtime wages under the NYLL.  The NYLL does not, itself, require the payment of "overtime."  See Ballard v. Community Home Care Referral Service, Inc., 264 A.D.2d, 747 (N.Y. App. Div. 2d Dep't 1999).  However, NYLL section 655(5)(b), "empowers the Commissioner of Labor to appoint a wage board, with the authority to, inter alia, recommend 'regulations governing . . . overtime or part-time rates." Johnson, 2011 WL 10945630, at *7 (quoting id.).  Pursuant to that authority, the NYDOL promulgated 12 N.Y.C.R.R. § 142-2.2, which states that:

> An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee 's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended, provided, however, that the exemptions set forth in section 13(a)(2) and (a)(4) shall not apply. In addition,

an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (a)(4) of such act, overtime at a wage rate of 1 ½ times the basic minimum hourly rate.

Therefore, if Plan A qualifies under the § 207(i) exemption, defendants will not be obligated to pay overtime wages under the NYLL labor law.[8]

## 1. "Retail or Service Establishment"

Section 207(i) of Title 29 of the United States Code lacks guidance on what constitutes a "retail or service establishment."  Courts have continued to apply the definition contained in the repealed "§ 13(a)(2)" of the FLSA in determining whether an employer is a retail or service establishment.  See Kelly v. A1 Tech., No. 09 Civ. 962, 2010 WL 1541585, at *10 (S.D.N.Y. Apr. 12, 2010); English v. Ecolab, Inc., No. 06 Civ. 5672, 2008 WL 878456, at *2 (S.D.N.Y. Mar. 31, 2008).  Under the repealed section, a retail or service establishment was defined as "'an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry.'"  English, 2008 WL 878456, at *2 (quoting 29 U.S.C. § 213(a)(2) (repealed by Pub. L. No. 101-157 (1989))).

## a. Services for Resale

Wave Comm argues that its cable installation services are not for resale because they are provided directly to end user customers in their homes, and not to distributors who acquire the services with the intent of reselling them.  Plaintiff argues that because Time Warner pays Wave Comm for the services, and Time Warner is then compensated by the

---

[8]  In determining whether the exemption applies, it is undisputed that the application is identical under the FLSA and NYLL classes for the first two prongs.  However, as to the third prong—whether each installer was paid one and one-half times the regular rate of pay for each week of work—that application differs with respect to the FLSA and NYLL classes.

end user, Time Warner is effectively reselling the services to its customers.  It is undisputed that more than 75% of Wave Comm's annual business is derived from its contract with Time Warner, and that Time Warner customers do not pay Wave Comm directly for the services Wave Comm provides.

The FLSA does not define the term "resale," but United States Department of Labor ("DOL") regulations and other courts apply the term's "common meaning," which "is the act of 'selling again.'"  29 C.F.R. § 779.331.  According to regulations, "[a] sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as a part, component or ingredient of another article."  29 C.F.R. § 779.331.

Applying this standard, other courts have found that a resale of goods or services did not occur in determining whether an employer qualified as a retail or service establishment. In <u>Schwind</u>, the defendant-employer supplied independent contractors to provide computer training for its clients' customers, and billed its clients for those services.  371 F. Supp. 2d at 563.  The end users who received the computer training paid the defendant's clients, and the clients then paid the defendant-employer.  <u>Id</u>. at 566.  The Court found that the defendant-employers' services were at the end of the stream of distribution, and were not intended for resale.  <u>Id</u>.  The Court reasoned that the computer training services were not being resold, because the "defendants provided a service to the end customer, even if it was their client's customer."  <u>Id</u>.

Even more similar to the facts here, in <u>Schultz v Crotty Bros. Dallas, Inc.</u>, a food service company contracted with a school to provide meals for students.  The school compensated the food service company and then included the cost of food in the tuition bills

paid by the parents; the students did not pay the food service company directly. 304 F. Supp. 191, 193 (W.D. Tex. 1969). The Court rejected the argument that there was a resale of goods and instead found the passing of money from the parents, through the school, to the defendant food service company to be merely a "matter of convenience." Id. at 196. The Court reasoned that the arrangement did not involve reselling because the school "never acquire[d] any right, title or interest in the food." Id.

Most notably however, are the recent decisions of two district courts, one in this Circuit and one in the Eleventh Circuit. When faced with the same question, these courts found that services provided by a cable installer to customers of a cable provider were not services for resale because there was no "subsequent sale" of the services. Owopetu v. Nationwide CATV Auditing Servs., Inc. ("Owopetu I"), No. 10 Civ. 18, 2011 WL 883703, at *9 (D. Vt. Mar. 11, 2011) (denying without prejudice defendant's motion for summary judgment after determining more evidence was required as to whether defendant's services were considered retail in the industry);[9] see also Jones v. Tucker Commc'ns, Inc., No. 11 Civ. 398, 2013 WL 6072966, at *6 (M.D. Ga. Nov. 18, 2013). Both courts found that the customers to whom the defendant-cable installation companies directly provide its services to are "at the very end of the stream of distribution," and therefore those defendants "provide[ ] . . . repair services . . . for the comfort and convenience of [the general] public in the course of its daily living," as opposed to providing them for redistribution. Owopetu I, 2011 WL 883703, at *7 (quoting 29 C.F.R. § 779.318(a)); see also Jones, 2013 WL

---

[9] The defendant later renewed its motion and was granted partial summary judgment. Owopetu v. Nationwide CATV Auditing ("Owopetu II"), No. 5:10–CV–18, 2011 WL 4433159 (D. Vt. Sept. 21, 2011).

6072966, at *7 ("Tucker [Communications, Inc.] operates at the end of the stream of distribution and serves the everyday needs of the community.")

Like the sellers in <u>Schwind</u>, <u>Schultz</u>, <u>Owopetu I</u>, and <u>Jones</u>, Wave Comm's provision of cable installation services to Time Warner customers does not constitute services for resale because there is no reselling.  The customers to whom Wave Comm provides services are at the very end of the stream of distribution and therefore Wave Comm "provides . . . its repair services . . . for the comfort and convenience of [the general] public in the course of its daily living," as opposed to providing them for redistribution.  <u>See</u> <u>Owopetu</u> <u>I</u>, 2011 WL 883703, at *7.  Wave Comm provides services to the end customer, even if that customer is Time Warner's customer.  <u>See</u> <u>Schwind</u>, 371 F. Supp. 2d at 566.  It is inconsequential that Wave Comm is compensated by Time Warner for its services rather than by the end customer.  The cost for Wave Comm's services is paid by the end consumer and it is merely a matter of convenience that payment passes through Time Warner as charges for installation services included in the customers' monthly cable bills.

Plaintiff also argues that the sale of Wave Comm's services to Time Warner customers is analogous to an example of a sale for resale included in DOL regulations.  29 C.F.R. § 779.334.  The regulation provides that

> in certain circumstances, sales of services to a business for a specific use in performing a different service which such business renders to its own customers are in economic effect sales for resale as a part of the service that the purchaser in turn sells to his customers, even though such services are consumed in the process of performance of the latter service.

<u>Id</u>.  An example of this is a storage establishment which uses mothproofing services to provide satisfactory storage services for its customers.  <u>Id</u>.  In such a case, the sale of the mothproofing services to that storage establishment is considered a sale for resale because

the mothproofing services are sold to the storage company for the specific use of maintaining the storage company's facilities and rendering its storage services to its own customers, even though the mothproofing services are consumed in the process of providing the storage services. Id. However, Wave Comm's services are distinguishable from this example and plaintiff's argument is unpersuasive. Wave Comm's services are not consumed as part of Time Warner's provision of cable television services, rather, they are a "discrete and necessary component" required for the end consumer to have access to cable television. Jones, 2013 WL 6072966, at *6.

Accordingly, defendants have established that at least 75% of its annual volume of sales are services not for resale.

**b. Recognition as Retail in Industry**

Having concluded that 75% of Wave Comm's services are not for resale, Wave Comm must next prove that its services are recognized as retail in the industry. Although the FLSA's language references recognition within the applicable industry, the Supreme Court has held that the question of whether a defendant's business is recognized as retail is determined by the court, not by the defendant or the defendant's industry. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 204–05 (1966); English, 2008 WL 878456, at *12. To aid in this determination, courts have fashioned another two-prong test based on DOL regulations: (1) the establishment must be part of an industry in which there is a "retail concept"; and (2) the establishment's services must be recognized as retail in that particular industry. See Kelly, 2010 WL 1541585, at *11 (citing 29 C.F.R. §§ 779.316, .322).

### i. **Retail Concept**

A business must have a retail concept before the industry characterization of its sales can be considered.  Jones, 2013 WL 6072966, at *6.  However, "a 'retail concept' cannot be artificially created in an industry in which there is no traditional concept of retail selling or servicing."  29 C.F.R. § 779.316.  The characteristics of a retail or service establishment in 29 C.F.R. § 779.318(a) help define this "retail concept":

> Typically a retail or service establishment is one which sells goods or services to the general public.  It serves the everyday needs of the community in which it is located.  The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. . . . It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living.

A retail concept is entirely foreign to some businesses, such as insurance companies and electric power companies.  Id. § 779.316.  Likewise, accounting firms, advertising agencies, dentists' offices, and securities dealers lack a retail concept.  Id. § 779.317.  There are other types of businesses however, "in industries where it is not readily apparent whether a retail concept exists and whether or not the exemption can apply."  Id.  As such, the regulations do not provide an exhaustive list of qualifying establishments.  Although cable installation and repair establishments are not identified in the regulations, § 779.320 provides a partial list of establishments whose sales or service may be recognized as retail.[10]

---

[10]  It is noted that in several cases, including one in this Circuit, the "retail concept" of businesses nearly identical to Wave Comm's has not even been at issue.  See Moore v. Advanced Cable Contractors, Inc., No. 1:12–CV–00115, 2013 WL 3991966, at *3 (N.D. Ga. Aug. 1, 2013) ("Defendants assert, and Plaintiffs do not dispute, that Advanced Cable is a retail and service establishment for the purposes of the FLSA."); Owopetu II, 2011 WL 4433159, at *4 ("[Plaintiff] does not dispute that the industry of servicing, installing, and repairing cable and broadband equipment has a 'retail concept.'"); Gruchy v. DirectTech Del., Inc., No. 08–10755, 2010 WL 3835007, at *2 (D. Mass. Sept. 30, 2010) (noting there was no dispute that company who performed similar services for a satellite television provider was a retail or service

(continued...)

That list includes a number of repair establishments including refrigerator service and repair shops, piano tuning establishments, shoe repair shops, automobile repair shops, and watch, clock and jewelry repair shops.

Plaintiff contends Wave Comm is unlike traditional retail establishments because rather than selling its services to the general public, Wave Comm sells its services to a single customer, Time Warner. Further, according to plaintiff, "[t]he general public's needs are cable television, telephone, or internet services, and Wave Comm merely assembles, installs and fixes the equipment necessary for [Time Warner] to sell its customers to begin, resume or continue the entertainment and communication services that [Time Warner] provides." Pl.'s Mem. Supp. Mot. Summ. J. 19.

Wave Comm's services are more analogous to the repair establishments listed in 29 C.F.R. § 779.320 than to the businesses identified in § 779.316 or § 779.317 which lack a retail concept. An establishment such as Wave Comm which installs and repairs cable services possesses the characteristics listed in § 779.318(a). According to plaintiff Johnson, Wave Comm's sales and services are available to the general public, including business and residential customers, for their personal use. Defs.' Statement of Mat. Facts ¶ 48. The cable installation services are provided to individual members of the general public in their own homes to enable them to access cable television and other services. Johnson also testified that installing and repairing cable television, the internet, and digital telephone, serves the everyday needs of the communities in which Wave Comm provides its services.

---

[10](...continued)
establishment); Horn v. Digital Cable & Commc'ns, Inc., No. 1:06 CV 325, 2009 WL 4042407, at *4 (N.D. Ohio Feb. 11, 2009) (noting defendant cable installation company put forth undisputed evidence that it qualified as a retail or service establishment).

Id. ¶ 49.  As discussed above, the services provided by Wave Comm are not resold or redistributed.  Rather, they are used by the person who purchases them, so they are at the end of the stream of distribution.  Finally, Johnson testified that Wave Comm does not manufacture any products.  Id. ¶ 46.

Plaintiff also insists that Wave Comm's status as a subcontractor performing construction-like work for Time Warner's customers closely equates it to the various home contractor entities that the DOL has identified as establishments lacking a retail concept. Plaintiff relies on materials promulgated by the DOL's Occupational Safety and Health Administration as part of the Standard Industrial Classification System ("SIC"), as well as the U.S. Census Bureau's North American Industry Classification System ("NAICS") to argue Wave Comm is like a construction contractor and plaintiff is a cable television hookup contractor.[11]  According to plaintiff, under the SIC, "cable television hookup-contractors" are categorized under the construction and not retail trade division.[12]  Likewise, under the NAICS, "cable television hookup contractors" are also categorized under the construction and not retail trade sector.[13]

Defendants dispute the characterization of Wave Comm installers as cable television hookup contractors and the conclusion that Wave Comm is part of the construction industry.

---

[11]  Plaintiff also cites DOL press releases and asserts that "recent DOL investigations into cable installation companies like Wave Comm confirm that the DOL does not consider these companies to be retail."  Pl.'s Mem. Supp. Mot. Summ. J. 20.  However, as defendants point out, those investigations concerned the failure to pay overtime on piece rate wages, and as described below, members of Subclass I were paid by commissions.  Therefore, the press releases are irrelevant to the question of whether Wave Comm qualifies as a retail or service establishment.

[12]  U.S. Dep't of Labor's Occupational Safety & Health Admin., SIC Manual (last visited March 3, 2014), http://www.osha.gov/pls/imis/sic_manual.display?id=416&tab=description.

[13]  U.S. Census Bureau, N. Am. Industry Classification Sys. (last visited March 3, 2014), http://www.census.gov/cgi-bin/sssd/naics/naicsrch?code=238210&search=2012 NAICS Search.

They argue installers do far more than simply hook up cable, and are responsible for installing, maintaining, and repairing cable television, the internet, and digital telephone systems, and have detailed telecommunications training. Defendants cite the DOL Bureau of Labor Statistics' Standard Occupational Classification ("SOC") which characterizes the position of "Telecommunications Equipment Installers and Repairers, Except Line Installers" as an "Installation, Maintenance and Repair Occupation."[14] Telecommunications equipment installers and repairers "[i]nstall, set-up, rearrange, or remove switching, distribution, routing, and dialing equipment used in central offices or headends. Service or repair telephone, cable television, Internet, and other communications equipment on customers' property." Id. Again, this position is classified within the SOC Major Group of "Installation, Maintenance and Repair Occupation" and not "Construction and Extraction Occupations." Defendants also point out that the position of cable television hookup contractor does not appear anywhere in the SOC. Defs.' Mem. Opp. Mot. Summ. J. 14–15. Further, in the NAICS, the telecommunications subsector is within the information sector, and not the construction sector.[15] The DOL Bureau of Labor Statistics' Occupational Outlook Handbook also lists "Telecommunications Equipment Installers and Repairers, Except Line Installers," within the telecommunications industry.[16]

---

[14]   U.S. Dept of Labor, Bureau of Labor Statistics', Standard Occupational Classification (last visited March 3, 2014), http://www.bls.gov/soc/2010/soc492022.htm.

[15]   Id., http://www.census.gov/cgi-bin/sssd/naics/naicsrch?code=517&search=2012 NAICS Search. Defendants argue installers are more appropriately characterized as

[16]   U.S. Dept of Labor, Bureau of Labor Statistics', Occupational Outlook Handbook (last visited March 3, 2014), http://www.bls.gov/ooh/installation-maintenance-and-repair/telecommunications-equipment-installers-and-repairers-except-line-installers.htm.

Installing, setting up, servicing, and repairing telephone, cable television, Internet, and other communications equipment on customers' property is exactly what plaintiff Johnson and the opt-in plaintiffs in this case did. Multiple sources recognize this position to be within the telecommunications industry. Plaintiff's reliance on the two sources categorizing the installers' work as construction based is unpersuasive as the installers did more than hookup wiring for cable television. Installers also dealt directly with end users in their homes or businesses. Installers' job duties are more analogous to those detailed in the telecommunications industry descriptions than the construction industry descriptions. Accordingly, it is found that the members of Subclass I are appropriately classified as members of the telecommunications industry, an industry with a retail concept, and not the construction industry, an industry lacking a retail concept.

Plaintiff also argues that Wave Comm's services are not retail because Wave Comm engages in wholesale sales, not retail sales, and because it obtained its contract with Time Warner through a reverse bidding process. According to the regulations, "[s]ales made pursuant to formal bid procedures . . . oftentimes by commercial and industrial concerns involving the issuance by the buyer of a formal invitation to bid on certain merchandise or services for delivery in accordance with prescribed terms and specifications, are not recognized as retail sales." 29 C.F.R. § 779.328(d). That section also provides guidance on how to distinguish between retail and wholesale sales:

> Typically, retail sales are made to the general consuming public. The sales are numerous and involve small quantities of goods or services. Wholesale establishments usually exclude the general consuming public as a matter of established business policy and confine their sales to other wholesalers, retailers, and industrial or business purchasers in quantities greater than are normally sold to the general consuming public at retail.

Id. § 779.328(a).

Plaintiff's arguments under § 779.328 rest on the presumption that Wave Comm provides its services to Time Warner, not Time Warner subscribers. As explained above in the services for resale section, Wave Comm provides its services to the individuals that use Time Warner products and services and thus its sales involve small quantities of goods and services to the general consuming public. While Time Warner provides work orders to Wave Comm pursuant to a contract established as a result of a formal bidding process, Wave Comm's services are still sold in small quantities to individual members of the general public.

Finally, it is seemingly undisputed that if Time Warner employees provided the same services to their own customers, Time Warner would be selling its services to the general public, serving the everyday needs of the community, and performing a function at the very end of the stream of distribution. Thus, plaintiff's contention is that Wave Comm's status as a subcontractor for Time Warner prevents it from satisfying the exemption because it services Time Warner as opposed to the general public. However, "courts have found a party's status as a subcontractor does not alter the retail nature of its business. Jones, 2013 WL 6072966, at *7 (collecting cases). Moreover, as in Jones, plaintiff here has not located any cases holding that a business cannot qualify for the retail or service establishment exemption solely based on their status as a subcontractor. This is so because "the focus here is on the nature of the services, not the arrangement between the providers of those services." Id. at *7. Wave Comm's contractual relationship with Time Warner does not preclude it from having a retail concept.

For these reasons, Wave Comm operates in an industry with a retail concept.

## ii. __Recognition as Retail__

Having concluded that Wave Comm operates in an industry with a retail concept, it must be determined if its services are recognized as retail within its industry.  "Such a determination must take into consideration the well-settled habits of business, traditional understanding and common knowledge."  29 C.F.R. § 779.324.  In making this decision, courts should consider the understandings of persons with knowledge of recognized industry classifications as well as sellers, purchasers, employers, employees, and private or governmental research organizations.  Id.; Owopetu II, 2011 WL 4433159, at *4 (explaining that court must first look to evidence as to how people in the industry view the establishment).  Next, the focus shifts to the inquiry already made under 29 C.F.R. § 779.318(a).  See Owopetu II, 2011 WL 4433159, at *5.  That is, whether the business: (1) sells goods or services to the general public; (2) serves the everyday needs of the community; (3) is at the end of the stream of distribution and does not take part in the manufacturing process.  29 C.F.R. § 779.318(a).

Defendants have not provided any testimony as to how people in the industry and with knowledge of the industry view Wave Comm's business.  In Owopetu I, the defendant's motion for summary judgment was denied without prejudice for this very reason.  2011 WL 883703, at *9 (finding more evidence was required as to whether defendant's services were considered retail in the industry).  The Owopetu I Court found that it was insufficient for defendant Nationwide to rely on another case, Horn, 2008 WL 7140826, at *7, to show that Nationwide was recognized as retail within its industry, where the plaintiffs in Horn did not dispute that the defendant in that case provided "retail" services.  Owopetu I, 2011 WL

883703, at *9, n.5.  Therefore, "the question of whether the defendant's services were recognized as retail within the industry was simply not at issue in <u>Horn</u>."  <u>Id</u>.

Upon renewing its motion in <u>Owopetu II</u>, defendant Nationwide submitted two affidavits to demonstrate that persons in and with knowledge of the telecommunications industry view Nationwide's services as retail.  First, Nationwide's Corporate Office Manager and member of the Society of Cable Telecommunication Engineers testified that Nationwide installers are "employed in an enterprise that is recognized as retail in the industry" and "contrasted the services that Nationwide technicians provide with laying or stringing cable to access a new housing development or an area previously not served by cable, which is not recognized as retail."  <u>Owopetu II</u>, 2011 WL 4433159, at *5 (internal quotations omitted).  Second, a certified professional vocational rehabilitation consultant testified that the position of a Nationwide technician "fall[s] within the generally-recognized and accepted definition of 'retail sales' occupations."  <u>Id</u>. (internal quotations omitted).  The plaintiff did not produce any evidence to the contrary and the Court found that Nationwide "established that persons within and with knowledge of the telecommunications industry view Nationwide as providing retail services."  <u>Id</u>.

More recently, in <u>Jones</u>, the defendants submitted the testimony of a high level executive in the telecommunications industry who opined that "the sale of cable installation services and equipment to individual consumers and the installation services performed by technicians by delivering, installing or servicing the equipment purchased or leased by the customer and activating or maintaining the customer's connection to the cable company's cable service" constitutes retail services, while laying or stringing cable to access a new housing development or a previously unserved area would not.  2013 WL 6072966, at *9

(internal quotations omitted). This is the case because the latter services "are for the direct benefit of the cable company, rather than for the comfort and convenience of the end user." Id. The defendants in Jones also relied on the industry testimony submitted in Owopetu II. The Jones Court found that the defendants satisfied the "recognized as retail" prong of the exemption. 2013 WL 6072966, at *9.

Here, the parties do not dispute that Wave Comm installers install, service, and repair equipment for Time Warner's customers in connection with their cable, internet, and telephone services. These services fall within the category of services the affiants in Owopetu II and Jones list as being considered retail. Further, the classifications provided by defendants support a view that Wave Comm installers fall within the telecommunications industry, an industry recognized as retail and not construction. Plaintiff has not shown the existence of a triable issue of fact regarding the industry view. Therefore, Wave Comm has satisfied its burden to show that its business is recognized as retail within its industry.

Because Wave Comm has a retail concept and is recognized as retail within its industry, it qualifies as a retail or service establishment and has met the first prong of the exemption.

### 2. **Commissions**

To satisfy the second prong of the FLSA's retail or service establishment exemption, Wave Comm must establish that each Subclass I member received at least 50% percent of his income in the form of "commissions." There is no dispute that every member of Subclass I earned at least 50% of his income under Plan A, where compensation was based on Tech Rates. Therefore, the only question is whether this compensation plan paid installers by commissions. Defendants contend the payments constituted commissions,

while plaintiff argues installers were paid on a piece rate basis. Plaintiff emphasizes that defendants referred to this compensation plan as a "piece rate" plan themselves, as well as in internal documents and communications with governmental agencies.

Neither the FLSA nor DOL regulations provide a definition for the term "commission" as it is used in 29 U.S.C. § 207(i). Owopetu I, 2011 WL 883703, at *3 (citing Parker v. NutriSystem, Inc., 620 F.3d 274, 278 (3d Cir. 2010)). What constitutes a commission under the FLSA "is an issue that finds little illumination from the sparse case law and the vague references in statutes and regulations." Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001). Judge Posner has instructed that "[t]he essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold." Yi v. Sterling Collision Ctrs., Inc., 480 F.3d 505, 508 (7th Cir. 2007). He went on to explain in Yi:

> Although his income is likely to be influenced by the number of hours a week that he works, the relation is unlikely to be a regular one. In one week business may be slow; he may make no sales and thus have no income for that week. The next week business may pick up and by working overtime that week he may be able to make up the income he lost because of slack business the previous week. Over a year his hours of work may be similar to those of regular hourly employees. So if he had to be paid overtime, his annual income would be higher than theirs even though he hadn't worked more hours over the course of the year than they had. We take this to be the rationale for the commission exemption from the FLSA's overtime provision.

Id. When concluding a commission-based scheme exists, courts have generally found the following three components present:

> (1) the employee's compensation must be tied to customer demand or the quantity of sales; (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income; and (3) there must

be proportionality between the value of the goods or services sold and the rate paid to the employee.

Owopetu I, 2011 WL 883703, at *4 (internal citations omitted).

Plaintiff first argues that the retail sales exemption was not intended to apply to employees like those of Wave Comm, and was instead intended to apply to commissioned employees in department stores selling "big ticket" items.  See 29 C.F.R. § 779.414.  This argument is without merit.  "Neither case law nor DOL regulations establish a per se requirement that commission employees must be 'in sales.'"  Owopetu I, 2011 WL 883703, at *4.

Turning to the components set out by the courts, Wave Comm's customer demand drove the number of installation and repair services it provided, which in turn drove the compensation that was available to installers.  Plaintiff and other installers testified that the demand for Wave Comm's services fluctuated throughout the year, which corresponded with a fluctuation in the volume of work orders, number of tasks completed, and income received.  Plaintiff does not argue that wages under Plan A were disconnected from customer demand and therefore the first component of a commission-based scheme is present.

Second, it is clear that Plan A provided performance-based incentives for installers to increase their income.  Plan A encouraged Wave Comm installers to work quickly to complete their orders which allowed them to request additional assignments.  Plaintiff testified that once all of his assigned work orders were complete, he could contact Wave Comm and request additional work orders.  Because his compensation was tied to the tasks successfully completed and not the number of hours worked, he had the opportunity to earn additional income by working faster and completing more tasks.  "[A] number of cases have

found commissions to exist based upon an employee's incentive merely to work faster." Owopetu I, 2011 WL 883703, at *4 (collecting cases). After all, "[t]hat is how commissions work; they are decoupled from actual time worked." Yi, 480 F.3d at 509. Performance incentives were also built into Plan A by way of assigned Tech Rates. Installers were assigned a Tech Rate; the higher an employee's Tech Rate, the higher the rate of pay they received for each installation or repair service. The assignment of a Tech Rate included an installer's proficiency and regular evaluations of their overall work performance. Thus, an installer who worked quickly and with a high degree of quality could be assigned a higher Tech Rate and earn higher compensation per task. Plaintiff does not argue that Plan A did not provide performance incentives and therefore the second component of a commission-based scheme is present.

With respect to the final component, defendants contend there is direct proportionality between the value of the services sold by Wave Comm and the rate paid to installers because installers received a percentage of the gross revenue that Wave Comm received from Time Warner for each item of work performed by installers. This amount fluctuated when Time Warner increased or decreased the price it paid to Wave Comm for its services. Plaintiff argues that proportionality is lacking because "although the piece rate paid to the installers may have been a percentage of the amount [Time Warner] paid Wave Comm, that does not change the fact that the installers' pay bore no relationship to what the end user paid [Time Warner] for these services." Pl.'s Mem. Supp. Mot. Summ. J. 26. According to plaintiff, installers' compensation had no relation to the amount Time Warner customers were charged for the installation service, and instead was dictated solely by the contract between Time Warner and Wave Comm. This is the same argument made by the plaintiff in

<u>Owopetu I</u> and misconstrues the proportionality requirement. 2011 WL 883703, at *4. Compensation consisting of commissions "usually denotes a percentage of the amount of monies paid out or received, as opposed to paying a set flat-rate for every item, regardless of its value." <u>Id</u>. at *5 (internal quotations omitted).

In this case, the rate paid to Time Warner by its subscribers is not indicative of the value of the services sold by Wave Comm and paid to Wave Comm's installers. It is the proportionality between the rate paid by Time Warner to Wave Comm and the rate paid by Wave Comm to its installers that must be examined. "Under Plan A, Wave Comm assigned a specific dollar value to each item of work performed by its installation technicians . . . [which] represented a percentage of the income Wave Comm received from [Time Warner] for each item of work." Guillerault Aff., June 24, 2011, ¶ 13, ECF No. 52–7.

These facts are analogous to those in <u>Owopetu I</u>, where proportionality was satisfied as it was undisputed that the "service technicians are paid a percentage of the scheduled rate for every service they perform, and their pay thus fluctuates 'in tandem' with the value of each service." 2011 WL 883703, at *5. Contrary to that plaintiff's assertion, the Court found that "this proportionality is not disturbed by the fact that Nationwide is compensated by a third party, [Time Warner], rather than the individual end-user customers. Regardless of the source of the payment, Nationwide splits a percentage of the revenue with its service technicians." <u>Id</u>.

Finally, as Magistrate Judge Baxter noted, "[w]hile the defendants' characterization of Wave Comm's compensation system may have some probative value, it should not, in this court's view, be dispositive on the ultimate issue of whether Wave Comm had a 'commission' or 'piece rate' compensation system under the FLSA." Am. Decision & Order, Sept. 27,

2011, ECF No. 72, at 14 (citing <u>Horn</u>, 2009 WL 4042407, at *5 (plaintiffs' statements that they are paid on a "piece rate" basis merely asserts a legal position without providing facts to support that position–e.g., pay reports, commission sheets, or pay calculations)).

Accordingly, members of Subclass I were compensated in proportion to the value that Wave Comm received from Time Warner for each service and the fact that Wave Comm was compensated by Time Warner and not by the individual end-user customer does not change the proportionality finding. Because defendants have demonstrated that compensation was tied to customer demand, the plan provided performance-based incentives, and proportionality existed, the payments made to members of Subclass I under Plan A constituted commissions and defendants have satisfied the second prong of the exemption.

### 3. Regular Rate of Pay Equal to or Exceeding One and One-Half Times the Minimum Wage

Finally, to fulfill the third and final prong of the exemption, Wave Comm must establish that the regular rate of pay for each Subclass I member was at least one and one-half times the minimum wage for all hours of work performed.

The regular rate of pay is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed and by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." 29 C.F.R. § 779.419 (internal citations omitted). The regular rate of pay is computed by taking an employee's total weekly earnings divided by his total hours worked during that week. If this number exceeds one and one-half times the federal minimum hourly wage, then the final requirement of the retail or service

establishment exemption is satisfied. The regular rate of pay must be calculated on a weekly basis; the averaging of hours over two or more weeks is not permitted. 29 C.F.R. § 778.104; (each workweek stands alone); see also Owopetu I, 2011 WL 883703, at *9 (citing Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd., 246 F. Supp. 2d 886, 895 (S.D. Ohio 2003)). For example,

> if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. . . . The rule is also applicable to pieceworkers and employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers and commission employees on a weekly basis.

29 C.F.R. § 778.104 (emphasis added).

Throughout the time that members of Subclass I worked for Wave Comm, the federal minimum wage changed several times. For work performed prior to July 24, 2007, the federal minimum wage was $5.15 per hour; for work performed from July 24, 2007 to July 23, 2008, the federal minimum wage was $5.85 per hour; for work performed from July 24, 2008 to July 23, 2009, the federal minimum wage was $6.55 per hour; and for work performed on or after July 24, 2009, the federal minimum wage was $7.25 per hour. Pl.'s Resp. to Defs.' Statement of Mat. Facts ¶ 77. Accordingly, one and one half times the federal minimum wage was $7.73; $8.78; $9.83; and $10.88 per hour, respectively. Id. ¶ 78. The issue is therefore whether the regular rate of pay for each member of Subclass I member was at least $7.73; $8.78; $9.83; and 10.88 during the applicable time periods. Defendants have submitted a chart detailing each Subclass I opt-in plaintiff, their hire date, pay periods in which they worked, bi-weekly and/or weekly earnings, weekly hours worked, hourly rate, one and one-half times the minimum wage at that time, and accordingly, whether

the wage requirement was satisfied.[17]  Quesnel Aff., Jan. 25, 2013, Ex. U, pts. 1 & 2, ECF No. 124–119 (minimum wage chart).

### a.  FLSA Class

### i.  April 2006 to September 27, 2009

Wave Comm does not possess any record of hours of work for the period between April 2006 and September 27, 2009.  Instead, defendants claim they can show that members of Subclass I received compensation greater than one and one-half times the minimum wage for almost all weeks using estimates of hours worked provided by plaintiffs in interrogatories.[18]  See Defs.' Mem. Supp. Summ. J. 25, 26; Quesnel Aff., Ex. M, pts. 1–14, ECF No. 124–97 (interrogatory responses).  Based on those responses and estimated hours of work, defendants' chart (Exhibit U) details the weeks in which the minimum wage requirement was satisfied and the weeks in which it was not for opt-in plaintiffs.  However, the average hours reported by the opt-in plaintiffs cannot be used by defendants to satisfy their burden under § 207(i) because the regular rate of pay must be calculated on a weekly basis and the average amount of hours worked cannot be used.  See 29 C.F.R. § 778.104.  As Wave Comm failed to track its employees' actual weekly hours between April 2006 and September 27, 2009, it cannot establish that members of Subclass I earned more than one and one-half times the minimum wage for any week during that period.  Therefore, defendants have not satisfied the third prong of the exemption for the period of April 2006 through September 27, 2009.

---

[17]  Defendants only included Subclass I FLSA opt-in plaintiffs in this chart.

[18]  Wave Comm only possesses interrogatory responses regarding hours worked from FLSA opt-in plaintiffs.  They were denied discovery from NYLL plaintiffs.  It is noted that the 57 opt-in plaintiffs are also members of the NYLL class, so defendants possess responses from those 57 installers.

### ii. **September 28, 2009 to March 2010**

Wave Comm started tracking installers' actual working hours on September 28, 2009, and therefore Wave Comm possesses hours of work for Subclass I members beginning on September 28, 2009, through the end of the period covered by Subclass I (March 2010). Defs.' Statement of Mat. Facts ¶ 79; Guillerault Aff., Jan. 25, 2013, Ex. O, ECF No. 124–78 and Ex. P, ECF No. 124–79.  Based on the actual number of hours worked for that period, and the calculations submitted by defendants in the minimum wage chart (Exhibit U), it can be determined that the regular rate of pay for each opt-in plaintiff in Subclass I was at least one and one-half times the minimum wage in some, but not all weeks from September 28, 2009 onward.  Wave Comm has thus satisfied the third prong of the exemption only with respect to pay periods covering September 28, 2009 and forward in which opt-in plaintiffs in Subclass I earned one and one-half times the minimum wage based on recorded hours of work, indicated by a "YES" in the far right "Minimum Wage Requirement Satisfied" column of Exhibit U.  For the weeks in which employees did not earn one and one-half times the minimum wage, the exemption cannot be applied.

### b. **NYLL Class**

Defendants have not submitted any reported actual hours of work, weekly wages, or calculations to demonstrate that members of the NYLL Subclass I were paid one and one-half times the minimum wage for all weeks that they were worked.  Therefore it is impossible to determine on summary judgment whether Wave Comm satisfies the third prong of the exemption for the NYLL class.  Accordingly, the exemption will be denied without prejudice for the NYLL class.

### 4. **Conclusion as to Exemption**

Wave Comm established that 75% of its annual dollar volume of services are not resold.  It also proved that it has a retail concept, is recognized as a retail business within its industry, and that members of Subclass I were paid on a commission basis under Plan A.  However, as Wave Comm did not track its employees' actual hours worked between April 2006 and September 27, 2009, the retail or service establishment exemption cannot be applied for those weeks as the defendant cannot establish that members of Subclass I were compensated at a rate of at least one and one-half times the minimum wage for each week worked during that period.  For the pay periods including September 28, 2009 and onward, when Wave Comm required installers to track and submit actual hours worked, Wave Comm satisfied the final prong of the exemption only in those weeks in which members of Subclass I were compensated at a rate of one and one-half times the minimum wage as identified in defendants' Exhibit U.  Defendants are entitled to the retail or service establishment exemption only for those weeks and are therefore exempted from the overtime requirement provisions of the FLSA for those weeks.  Defendants are not entitled to the exemption for the NYLL class members at this time because they have not put forth any evidence to show they can meet the third prong of the exemption.

### D. **Compensation Plan B**

In addition to claiming that defendants did not properly compensate them for overtime under Plan A, members of Subclass II claim that they performed additional work for which they received no compensation under Plan B—namely work during lunch periods and work at the end of a work day.  They also argue that Plan B's weighted halftime formula did not comply with the law.

## 1. **Plan B's Weighted Halftime Formula**

Plaintiff contends that members of Subclass II were not properly compensated for overtime work under Plan B from March 2010 to April 2011.  Defendants concede that for the first pay period in which Plan B was in effect, ending April 2, 2010, Wave Comm failed to properly calculate overtime pay for ten installers who were entitled to additional wages.  In that pay period, Wave Comm admits that it improperly failed to include the value of performance incentives when it calculated the value of weighted halftime.  However, it argues that during every subsequent pay period in which Plan B was utilized, members of Subclass II were properly compensated because Plan B complied with the FLSA and the NYLL as a matter of law.

Plaintiff relies largely on Walling v. Youngerman-Reynolds Hardwood Co. to support his contention that Plan B violated the FLSA and the NYLL.  325 U.S. 419 (1945).  In that case, an employer entered into a contract with its employees under which employees were paid $0.35 per hour and $0.525 per overtime hour worked.  Id. at 423.  However, workers could earn more based on a piece rate compensation system under which they were paid according to the amount of work completed in an hour.  Id. at 422.  Employees earned more under the piece rate system and were paid an average of $0.59 per hour.  Id.  at 425.  The employer attempted to manipulate the provisions of the FLSA by setting an artificially low base compensation rate, and then compensated employees under the piece rate system so that employees were effectively paid $0.59 for every hour worked, regardless of whether overtime work was performed.  Id. at 426.  The Supreme Court held that overtime compensation must represent a 50% premium above the actual rate paid to employees under normal circumstances.  Id.

In this case, Wave Comm's weighted halftime plan was designed specifically to avoid the issue presented in <u>Walling</u>, and to comply with DOL regulations which state: "Since the term regular rate is defined to include all remuneration for employment . . . whether derived from hourly rates, piece rates, production bonuses or other sources, the overtime provisions of the act cannot be avoided by setting an artificially low hourly rate." 29 C.F.R. § 778.500(a). An employee who performed work quickly, and thus would have earned more based on the previous piece rate compensation system, was paid a performance incentive based on the difference between the amount they were paid according to their hourly wage and the amount they would have earned under the prior piece rate compensation plan. This bonus was included in the calculation of premium overtime wages for each pay period in which the weighted halftime compensation plan was utilized, except for the first period—hence the term "weighted" to convey the fact that the value of overtime wages was calculated by including <u>all</u> income earned. For example:

> Hours: 51
> Hourly Wage: $8.50
> Performance Incentive: $384.80
>
> An employee's regular rate of pay would be calculated as follows:
> (Hourly Wages + Performance Incentive) / Hours = Regular Rate
> (($8.50 x 51) + $384.80) / 51 = $16.05 Regular Rate
>
> Once the employee's regular rate was calculated, weighted halftime was calculated as follows:
> (Regular Rate x 0.5) x Overtime Hours = Weighted Halftime
> ($16.05 x 0.5) x 11 = $88.28 Weighted Halftime
>
> Then the employee's total wages were calculated as follows:
> Hourly Wages + Performance Incentive + Weighted Halftime = Total Wages
> ($8.50 x 51) + $384.80 + $88.28 = $906.58 Total Wages

Contrary to plaintiff's assertion, the performance incentive was included in the regular rate computation for all but the first pay period in which Plan B was in effect. Plaintiff's suggested formula overcompensates installers by including the regular rate of pay for all hours worked in addition to providing compensation for overtime hours worked at one and one-half times the regular rate of pay. See Defs.' Mem. in Opp'n to Pl.'s Mot. Summ. J. 5, ECF No. 125. This formula improperly compensates installers at two and one-half times the regular rate of pay for all hours over forty.

Accordingly, the formula for Wave Comm's weighted halftime compensation plan did not violate the FLSA or the NYLL as a matter of law.

## 2. **Unreported Hours**

Plaintiff further contends that Plan B violated the FLSA and the NYLL because installers were not paid for work during their unpaid lunch breaks and after their shift ended. Defendants contend this claim must be dismissed because they paid installers for all reported hours and relied upon representations made by members of Subclass II regarding the number of hours worked.

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011). "Though Congress has never explicitly defined what constitutes work under the FLSA, the Supreme Court has generally described work as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" Singh v. City of N.Y., 524 F.3d 361, 367 (2d Cir. 2008) (quoting Tenn. Coal, Iron

& R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944)).[19] "Activities that occur during an unpaid mealtime constitute work and must be compensated if those activities are undertaken 'predominantly for the benefit of the employer.'" Sherald v. Embrace Technologies, Inc., No. 11 Civ. 939, 2013 WL 126355, at *6 (S.D.N.Y. Jan. 10, 2013) (quoting Reich v. S. New Eng. Telecoms. Corp., 121 F.3d 58, 64 (2d Cir. 1997)).

The determination of what qualifies as work "is necessarily fact-bound." Reich, 121 at 64. "Moreover, a defendant is not entitled to summary judgment under the FLSA simply because the plaintiff has not precisely quantified the amount of uncompensated work he has performed, so long as a genuine issue of fact exists as to whether some uncompensated work was performed, defendant's knew of this work, and a reasonable basis exists for calculating the amount of that work." Sherald, 2013 WL 126355, at *6 (citing Kuebel, 643 F.3d at 365).

Here, plaintiff claims that he and the other installers were not paid for work occurring during mealtimes and at the end of their shifts when installers completed billing sheets at home. Plaintiff testified to his performance of work during his mandated lunch break and there is evidence that Wave Comm was aware that installers completed billing sheets at home but were not compensated for it. This testimony cannot be discounted on the present motion.

Several installers including Johnson testified at their depositions that Wave Comm instructed installers to record that they took daily, one-half-hour lunch breaks, even if they

---

[19] The Supreme Court has recognized the continued vitality of its earlier description of the term "work" despite the passage of the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–262 following Tennessee Coal, Iron & Railroad Co., 321 U.S. 590. See IBP, Inc. v. Alvarez, 546 U.S. 21, 28 (2005).

did not. Selander Aff., Jan. 31, 2013, Ex. 33, 161:22-162:11 (Johnson Dep.), ECF No.

125–37; Ex. 34, 73:9-17 (Romanowski Dep.), ECF No. 125–38; Ex. 38, 68:2-25 (Thayer

Dep.), ECF No. 125–42. One of those installers testified that work assigned through the

contract with Time Warner was assigned for two periods each day, 8:00 a.m. to 12:00 p.m.

and 12:00 p.m. to 5:00 p.m., which did not leave time for a lunch, despite being told to record

having taken one. Thayer Dep. 69:12-70:2. Defendants contend that they informed

installers that in order for Wave Comm to comply with the law, installers had to stop working

for thirty minutes for a meal. Further, because each member of Subclass II had control over

the time sheet he submitted each day, defendants argue that installers had the ability to

account for time spent working during their lunch and thus the ability to receive

compensation for all work performed.

Several installers testified that after they completed their last job for the day, they

would go home and fill out their required billing sheets. Plaintiff claims that installers did not

account for this time on their time sheets and were not paid for it. Defendants maintain that

Wave Comm never instructed employees not to record time spent at the end of the day

completing billing sheets and that there is no evidence to show that Wave Comm ever

refused to compensate an employee for such work. Moreover, defendants argue that

because installers had complete control over the content of their time sheets, they had the

ability to enter any time they desired for the start and end of their work day. One opt-in

plaintiff testified that he built additional time into his reported hours of work to account for the

amount of time it took him to complete his billing sheets at the end of the work day and email

them to Wave Comm, and he was paid for that time. Thayer Dep. 65:6-15. Defendants

contend that they had no knowledge that installers were continuing to work beyond the time

they recorded on their own time sheets. However, defendants admit that "the evidence may ultimately show that Wave Comm knew that installation technicians were completing required paperwork at home" but argue that Wave Comm never instructed installers not to record this time. Defs.' Mem. Supp. Summ. J. 30.

This testimony could allow a reasonable jury to conclude that defendants were aware that employees worked through their lunch breaks and after their shifts to complete billing sheets without compensation. There are questions of fact which preclude a grant of summary judgment to defendants on plaintiff's unreported hours claim. If Wave Comm knew or had reason to believe that work was being performed and installers were not compensated, it must count the time as hours worked. Defendants have failed to establish as a matter of law that members of Subclass II are not entitled to wages for unreported hours worked during meal times and at home filing out billing sheets following installations.

### E. Individual Liability of Guillerault and Ruzzo

Plaintiff moves for summary judgment on the issue of Guillerault and Ruzzo's individual liability with regards to Wave Comm's alleged overtime pay violations. In order to establish that Ruzzo and Guillerault are individually liable for Wave Comm's violations, plaintiff must demonstrate that they qualify as employers under the FLSA.

Employers are required to provide overtime payment to employees under the FLSA. 29 U.S.C. § 207(a)(1). An individual is an employer, subject to liability, if they are a "person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Although this determination is fact intensive, summary judgment remains appropriate when the evidence, viewed in the light most favorable to the defendant, establishes as a matter of law that the defendant is in fact an employer under the FLSA.

See Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 143–44 (2d Cir. 2008).  "The

Supreme Court has emphasized the expansiveness of the FLSA's definition of employer."

Herman v. RSR Sec. Servs. LTD., 172 F.3d 132, 139 (2d Cir. 1999) (internal quotations

omitted) (citing Falk v. Brennan, 414 U.S. 190, 195 (1973)).

In determining whether an individual is an employer under the FLSA, "the overarching

concern is whether the alleged employer possessed the power to control the workers in

question . . . with an eye to the economic reality presented by the facts of each case."  Id.

(internal citations omitted) (citing Goldberg v. Whitaker House Coop., 366 U.S. 28, 33

(1961)).  The relevant factors in determining whether an individual is an employer under the

FLSA include "'whether the alleged employer (1) had the power to hire and fire the

employees, (2) supervised and controlled employee work schedules, (3) determined the rate

and method of payment, and (4) maintained employment records.'"  Barfield, 537 F.3d at

142 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  No single factor

is dispositive, and the test must be considered under the totality of the circumstances.

Herman, 172 F.3d at 139.  Financial control over the company can also be considered

indicative of employer status.  See id. at 140.

Guillerault and Ruzzo are the sole owners of Wave Comm.  Defs.' Resp. to Pl.'s

Statement of Mat. Facts ¶ 62.  It is undisputed that they have financial control over the

business and had the authority to dissolve Wave Comm and liquidate its assets.  Id. ¶ 67.

They are involved in decisions regarding the hiring and firing of employees and determine

how frequently installers are paid and the method of payment.  Id. ¶¶ 73, 82.  Guillerault is

responsible for Wave Comm's payroll and accounting and has reviewed employee

timesheets.  Id. ¶¶ 71, 72.  Both Guillerault and Ruzzo receive complaints and compliments

regarding the installers' work performance, and issue letters of counsel to installers regarding employment concerns. Id. ¶¶ 85, 86.

Defendants fail to cite any issues of material fact that raise a question as to whether Guillerault and Ruzzo acted as employers under the FLSA. They assert that since there is evidence in the record that Wave Comm's general manager, Robert Coleman, "had a significant role in developing and implementing Wave Comm policies, including compensations plans, and made daily decisions with respect to Plaintiffs' and their work," there is an issue of material fact concerning whether Guillerault and Ruzzo were employers under the FLSA. Defs.' Mem. in Opp'n to Pl.'s Mot. Summ. J. 30. The mere assertion that someone else may have been involved in determining company policies does nothing to refute the argument that Guillerault and Ruzzo were employers themselves. Defendants fail to address the uncontroverted facts which show that they are the sole owners of Wave Comm, having complete financial control over the business. They undisputably exercise significant control over the hiring and firing of employees, maintenance of employment records, and compensation of employees.

It is clear that Guillerault and Ruzzo act in the interest of an employer in relation to the employees of Wave Comm. They have failed to cite any evidence that would allow a reasonable finder of fact to determine that they are not employers liable under the FLSA as a matter of law. Accordingly, plaintiff is entitled to summary judgment on the issue of Guillerault and Ruzzo's individual liability.

### F.  Unjust Enrichment

Plaintiff and defendants both move for summary judgment with regards to defendants' unjust enrichment claim. Defendants claim that some installers have been unjustly enriched

as they have retained tools provided by Wave Comm for use in the course of their

employment and have had their payments for those tools returned to them by NYDOL.

Under New York law, a party claiming unjust enrichment must establish that (1) the

other party was enriched, (2) at the first party's expense, and (3) equity and good conscience

require restitution be paid to the first party.  Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,

373 F.3d 296, 306 (2d Cir. 2004).  "[T]he mere fact that [a] plaintiff's activities bestowed a

benefit on the defendant is insufficient to establish a cause of action for unjust enrichment."

Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A., 481 F. App'x 622, 627 (2d. Cir 2012)

(summary order) (quoting Clark v. Daby, 300 A.D.2d 732, 732 (N.Y. App. Div. 3d Dep't

2002)).

The assertion that plaintiff received a benefit as a result of defendants' actions is

insufficient to support a claim of unjust enrichment by itself.  Defendants state that

"[p]laintiffs are absolutely correct that Wave Comm agreed to repay its technicians the

amounts that were deducted from their wages instead of engaging in a prolonged legal

dispute."  Defs.' Mem. in Opp'n to Pl.'s Mot. Summ. J. 28, 29.  Defendants recognized that

the wage deductions were unlawful and voluntarily stipulated to make repayments to NYDOL

to avoid engaging in a legal dispute which could have been time consuming and costly.  The

assertion that some installers ultimately benefitted from those payments is not enough to

show unjust enrichment.

"The essential inquiry in any action for unjust enrichment or restitution is whether it is

against equity and good conscience to permit the defendant to retain what is sought to be

recovered."  Paramount Film Distrib. Corp. v. State, 30 N.Y.2d 415, 421 (1972) (internal

citations omitted).  "Generally, courts will look to see if a benefit has been conferred on the

defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." Id. (internal citations omitted).

Defendants here cannot show that equity and good conscience require the installers to return payments made to them by NYDOL as reimbursement for unlawful wage deductions made by Wave Comm in the first place. Although some installers still possess both the tools and the money that was deducted from their wages by Wave Comm to pay for those tools, they did not receive those benefits through any tortious or fraudulent conduct of their own. Moreover, defendants received the benefit of the installers' possession of the tools as the installers needed the tools to perform their job duties for Wave Comm. The installers were also not enriched through a mistake of fact or law. Defendants knew the installers would receive reimbursements from NYDOL as a result of the stipulation. The benefits which they claim unjustly enriched the installers were conferred on the installers as a result of their own voluntary and self-interested conduct. It cannot be said that the installers have been unjustly enriched.

Therefore, summary judgment on the unjust enrichment counterclaim will be granted as to plaintiff, denied as to defendants, and the counterclaim for unjust enrichment will be dismissed.

## VI. CONCLUSION

The claims of the opt-in plaintiffs are limited by the Fair Labor Standard Act's statute of limitations as identified in defendants' Exhibit W, subject to a determination of willfulness by the jury. With regard to the retail or service establishment exemption, Wave Comm established that 75% of its annual dollar volume of services are not resold, that it is

recognized as a retail business within its industry, and that members of Subclass I were paid on a commission basis under Plan A. However, defendants can only satisfy the third requirement of the exemption for some of the pay periods including September 28, 2009 and onward for the FLSA class, when Wave Comm required installers to track and submit hours worked. The weeks in which defendants are entitled to the exemption are identified in defendants' Exhibit U.

Plan B's compensation formula for members of Subclass II complied with the FLSA and NYLL, except as to the first pay period as conceded by defendants. However, there are questions of fact which must be resolved to determine if defendants are liable for wages not paid to the installers for unreported hours worked while completing billing sheets and during meal breaks. Next, Guillerault and Ruzzo are employers within the meaning of the FLSA and may be found individually liable for violations. Finally, defendants' counterclaim for unjust enrichment fails as a matter of law as the installers were not enriched through any unlawful, tortious, or fraudulent conduct of their own and this counterclaim must be dismissed.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED in part and DENIED in part and plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part;

2. The opt-in plaintiffs' claims under the FLSA are time barred or limited as identified in defendants' Exhibit W, subject to a determination of willfulness by the jury;

3.   Wave Comm GR LLC is entitled to the retail or service establishment exemption only in those weeks after September 28, 2009 in which members of FLSA Subclass I were compensated at a rate of one and one-half times the minimum wage as identified in defendants' Exhibit U;

4.   Wave Comm GR LLC's formula for weighted halftime under Compensation Plan B complied with the Fair Labor Standards Act and New York Labor Law;[20]

5.   Wave Comm GR LLC may be liable for unreported hours worked by installers;

6.   Robert Guillerault and Richard Ruzzo are employers under the FLSA and are therefore individually liable for any violations; and

7.   Wave Comm GR LLC's counterclaim for unjust enrichment is DISMISSED.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  March 14, 2014
          Utica, New York.

---

[20]   Except for the first pay period in which Compensation Plan B was utilized in which defendants concede ten installers' paychecks were calculated incorrectly.